Conn, J.
 

 The facts in this case disclose that one Todino, husband of the plaintiff, on April 29, 1921, procured of the Ohio Farmers’ Insurance Company, hereinafter referred to as defendant, a. fire and theft policy covering on an automobile; that on October 27, 1921, the husband visited the agent of the company and stated that he wanted the policy “corrected” by having it run in favor
 
 *275
 
 of his wife, hereinafter referred to as plaintiff; that pursuant to such direction the agent of the company made an indorsement, substituting the plaintiff instead of the husband as the insured.
 

 Subsequently suit was entered in the full amount of the policy, and defendant answered with
 
 a.
 
 denial of liability, averring that no bill of sale was executed by the husband to the plaintiff, in accordance with the act of the General Assembly found in Volume 109, page 330
 
 et seq.,
 
 of the Ohio Laws, and that the policy contained a provision exempting the company from liability, in event the insured was not the sole and unconditional owner of the property covered by the policy.
 

 Plaintiff and her husband testified that on October 27, 1921, the husband gave the car to the plaintiff; that the car was stolen within a day or two thereafter, and proofs of loss were made to the defendant company, which rejected the claim. It was conceded or fully proven at the trial that no bill of sale was executed, and that the policy contained the clause as pleaded by the defendant. The common pleas directed a verdict for defendant and entered judgment thereon, which judgment the Court of Appeals reversed, and the case is here for our construction of that statute, in so far as it is applicable to the precise facts.
 

 It is unnecessary at this time to determine what rights, if any, plaintiff might have against her husband and all the world, if the issue were as to her right of possession of this car. The issue and the only issue in this case is: What right has plaintiff, in view of the sole and unconditional ownership clause, to recover from defendant for the
 
 *276
 
 loss of the oar, it appearing that no bill of sale had been issued to plaintiff for the automobile prior to or at the time she claimed to acquire title to the car, or at the time the indorsement was placed on the policy, or, indeed, at the time the ear is claimed to have been stolen?
 

 It is provided by the above-cited statute that in all gifts in which title passes to a used motor vehicle the person making the gift shall execute, in the presence of two witnesses, a bill of sale in duplicate, and deliver same to the donee at or before the passage of title; that such bill of sale shall be duly verified before a notary public or other person authorized to administer oaths; that any such bill of sale not verified before delivery shall be null and void, and of no effect in law; that each person so receiving a used motor vehicle shall obtain from the person conveying, at or before the transfer or delivery, such bill of sale in duplicate, and, finally, that the person receiving the bill of sale shall, within three days, file one of the duplicate copies with the clerk of courts of the county, who shall affix his official seal to such instrument. Other sections of the act provide money penalties for the failure to observe the several requirements.
 

 The authorities are plentiful that courts always look to the language of a statute, its subject-matter, and the wrong or evil it seeks to remedy or prevent, or, in other words, the purpose sought to be accomplished by its enactment, to determine whether a transaction governed by such statute is void if the statutory requirements be not followed, or whether (there being no direct provision maldng
 
 *277
 
 such transaction void) the penalty provided by the statute foT the failure to observe it is all that is to be exacted.
 

 A distinction has been recognized between statutes designed for the protection of the public and those designed primarily for the raising of revenue. The courts are in accord that where a statute is enacted to protect the public against fraud or imposition, or to safeguard the public health or morals, a contract in violation thereof is void, even though a money penalty also is. exacted.
 

 The statute under consideration is not a revenue raising measure. No fees of any consequence are paid or are payable. It was not designed to prevent the sale of automobiles. Its sole purpose was to prevent, in so far as possible, the stealing of automobiles, which, because of the opportunity to commit the crime ánd escape detect tion, unfortunately had become, and is still, so prevalent as to be classifiable as a near industry. The declaration of the General Assembly which passed the act is that its purpose was. and is to prevent traffic in stolen ears.
 

 In view of the requirement of the statute that a bill of sale shall be verified before it can have force and effect, how can it be successfully argued that no bill at all may have force and effect? Omission of action is not action. Nonperformance is not performance. Failure to do a thing is not the doing of it. The absence of a paper is not the equivalent of a paper. As title cannot pass without a verified bill of sale, and in this transaction no bill of any kind or character was executed by the donor or filed by the donee (plaintiff),
 
 *278
 
 how can it be claimed that at the time of the theft plaintiff was the sole and unconditional owner of the car, within the meaning’ of the policy?
 

 Conditions in policies are part of the consideration. For a small premium an insured obtains a large protection. A recovery on an insurance policy in the face of a violation of the provisions of the policy has the effect of penalizing the prudent and careful policy holders for the benefit of the careless and negligent one. This is so, since insurance companies are merely clearing houses for their policy holders. Such companies primarily bring no property into the world. Insurance companies are trustees of an express trust, and the payment by the officers of such companies of questionable bills and charges is as reprehensible as would be the squandering of trust funds by bankers, administrators, guardians, or other trustees.
 

 Insurance contracts, as a rule, are plain. They follow standard forms. In some states policy forms are settled by statute. While Ohio has not provided a statutory form of policy, practically all policy forms in use in this state are in line with the accepted forms of other states. The one in suit is the standard form. Plaintiff under the law was required to know the contents of her policy. If in doubt as to its scope and extent, it was her duty to consult some one who could advise her. An explanation to the agent of the company of her so-called ownership at the time he was directed by the husband to change the name of the insured would have resulted either in the cancellation of the policy or in an accurate indorsement being
 
 *279
 
 made thereon. If the latter- had been made, the company would have been estopped to plead the ownership clause. Thus both parties would have been protected, and the loss of this car, which was stolen the next day after the indorsement was placed on the policy, would have been sustained by the party who, having full knowledge of the facts, assumed the risk. No fraud on the part of the company or its agent is pleaded, nor could any be set up under the conceded facts, and, this being so, the policy conditions must be respected.
 

 As bearing upon the question of what is necessary to pass title, attention is called to the case of
 
 Building Association
 
 v. Clark, 43 Ohio St., 427, 2 N. E., 846, in which it was held that the purchaser from the mortgagor of lands incumbered by an unrecorded mortgage takes title thereto free of such incumbrance, even if such purchaser had full knowledge and notice of the existence of the mortgage. This is so because the statute relating to the recording of such instruments provides that a mortgage shall take effect from the time it is delivered to the recorder of the proper county for record, and, until delivered, it is invalid to all the world, except the parties to it.
 

 In the case of
 
 Holliday
 
 v.
 
 Franklin Bank of Co
 
 lumbus, 16 Ohio, 533, it was held that a mortgage has no effect, either in law or equity, until it is delivered to the recorder-of the county for record. Statutes relating to eonveykneing are designed to settle the title to real estate, so that individuals having to do. with lands may be protected, and were passed primarily to. prevent crime, not to raise revenue. How can the statute ip question be
 
 *280
 
 waived or disregarded, in the face of the construction given by this court to the statutes relating to conveyancing?
 

 This transaction is not like unto that of one who in good faith buys a car from another believed to be the owner, but who, in fact, is not the owner; for instance, a thief. In such case, the courts have allowed a recovery. A recent case of that type is
 
 Norris
 
 v.
 
 Alliance Insurance. Co.
 
 (N. J.), 123 Atl., 762. The court there says:
 

 “The plaintiff did not, knowingly, make any false representation to defendant as to his ownership; he supposed he was the unconditional and sole owner without any fact known to him to the contrary, and, so far as this record shows, was, and is, the only person claiming ownership.”
 

 The case at bar is quite a different one, because plaintiff here knew, or was bound as a matter of law to know, that she had no title. She is not in position to assert her good faith, in view of the fact that she disobeyed the statute. In effect, she misrepresented her ownership of the car to the defendant. In the last above cited case the purchaser violated no law and was allowed a recovery. In the case at bar, the plaintiff disobeyed the law and therefore should not have a recovery. It is inconceivable that a person at one moment may defy the state and in the next invoke its protecting arm. One may not disobey a statute and thereafter ask the courts to give him the benefit conferred by such statute.
 

 There is a line of cases upholding the principle that where a contract involved in suit grows out of a prior illegal contract, the later transaction
 
 *281
 
 may be deemed valid if it does not depend for its validity upon the original illegal transaction; in other words, if it is purely collateral. It is not difficult to understand the reason for this rule, but sometimes its application is á close question.
 

 One test is to ascertain whether one may make out a case in which is involved the second transaction, without calling to his aid the illegal transaction. As was said in
 
 Minnesota Lumber Co.
 
 v.
 
 Whitebreast Coal Co.,
 
 56 Ill. App., 248, the test is: May the demand be enforced in law without the aid of the illegal contract to establish the case?
 

 In the ease at bar, while the burden of evidence may have shifted to the insurance company, it was necessary that the plaintiff rest her title to the car in question on the bill of sale required by the statute. Otherwise she had no title. Nor can plaintiff succeed where, although not required to resort to the illegal transaction to establish a
 
 prima facie
 
 case, he is compelled to resort to it to meet a complete
 
 prima facie
 
 defense.
 
 Mathews
 
 v.
 
 Wayne Junction Trust Co.
 
 (D. C.), 197 Fed., 237, holds that a receiver, having made a
 
 prima facie
 
 case which was completely answered by defendant, who was compelled in rebuttal to bring out and rely on a fraudulent transaction to which his company and defendant had been parties, could not recover.
 

 In 1 Story on Contracts (5th Ed.), Section 761, it is suggested that there is a distinction between cases where the statute is merely directory and those where the statute is prohibitory. In the instant case it appears the statute is prohibitory, be-' cause a bill of sale can have no force and effect unless it is properly executed and filed for record
 
 *282
 
 with the clerk of courts, and carries the imprint of the seal of the clerk.
 

 True, as has been argued, it was held in
 
 Conithan
 
 v.
 
 Royal Insurance Co.,
 
 91 Miss., 386, 45 South., 361, 18 L. R. A. (N. S.), 214, 124 Am. St. Rep., 701, 15 Ann. Gas., 539, that a policy of fire insurance issued to the keeper of a bawdyhouse upon furniture used therein was not void because of the unlawful business conducted there. But an examination of that case discloses there was no question raised of the title of the insured. Admittedly, the business conducted in the bawdyhouse was illegal, but the furniture was not held in violation of any law. Furthermore, there was no provision in the policy making an illegal use of the furniture a ground of forfeiture of the policy.
 

 The Supreme Court of that state (Mississippi) does not lose sight of the sound rule, however, because in
 
 Pollard
 
 v.
 
 Phoenix Insurance Co.,
 
 63 Miss., 244, 56 Am. Rep., 805, where a question arose under a statute of the state making provision for the collection of its revenue, one of the provisions of that statute being that a person exercising any of the privileges enumerated should pay a privilege tax, a contract of insurance was held to be within the statute. The facts were these: One Mrs. Pollard was a merchant in Okolona and entered into a contract of insurance against loss by fire with an insurance company. .Subsequently the stock of goods claimed to have been insured under the policy was destroyed. Proofs of loss were made, and, liability being denied, suit was entered to collect the loss and damage. The insurance company set up the defense that the contract was void
 
 *283
 
 because tbe plaintiff was doing business in violation of law. Tbe section of tbe statute (Code 1880, Section 589) in reference to which privilege taxes were required to be paid provided that any person who shall exercise any-of the privileges enumerated in the chapter, “without first paying the price and procuring license as required, shall on conviction be fined,” etc., “or imprisoned,” etc., or both, “and all contracts made with any person who shall violate this act, in reference to the business carried on in disregard of this law, shall be null and void, so far only as such person may base any claim upon them, and no suit shall be maintainable in favor of such person on any such contract,” etc. The court held that a contract of insurance to protect the goods used in the business conducted in violation of the revenue laws was a contract “in reference to the business carried on in disregard of this law,” and therefore void.
 

 In
 
 Vining
 
 v. Bricker, 14 Ohio St., 331, a note was given in consideration of a sale of diseased sheep; the owner knowing them to be diseased when he sold them to the giver of the note. The statute (4 Curwen’s Rev. St., 2866) then in force provided that whoever, being the owner of diseased sheep, should sell them without fully disclosing the fact to the purchaser, should be fined. There was a further provision in the statute that nothing in the section should change the right of any one sustaining damage in bringing suit for the recovery thereof, or in defending against any suit brought upon the sale of such sheep.
 

 In view of the proviso to the section, this court held that the note was not void, for the reason
 
 *284
 
 that the Legislature especially provided “that the rights of the party sustaining damage in .his action or defense, should remain
 
 unchanged,
 
 neither enlarged nor diminished by the statute.”
 

 Suppose the penalty had been that such a
 
 note
 
 was to be deemed null and void, would it not have been conclusive? That is precisely what the General .Assembly said should be the status of a transaction of the kind in suit, in so far as the passage of title is concerned. Hence the doctrine of upholding a contract as unrelated to a prior illegal contract has no application in this case.
 

 The judgment of the Court of Appeals should be and is reversed. The judgment of the Common Pleas should be and is affirmed.
 

 Judgment accordingly.
 

 Marshall, C. J., Robinson, Matthias, and Day, JJ., concur.