No. 26,791.

C. M. MORRIS, *Appellee*, v. THE FIREMEN'S INSURANCE COMPANY OF NEW JERSEY, *Appellant*.

SYLLABUS BY THE COURT.

INSURANCE—*Insurable Interest in Automobile—Necessity of Purchaser Following Statutory Requirements*. One who buys an automobile from any person other than a regular dealer having an established . place of business, without requiring the seller to be identified by two persons of the buyer's acquaintance and without requiring a bill of sale to be executed by the seller, with his name and address, and giving an accurate and comprehensive description of the car, and particularly its correct engine number, and containing also the signatures and addresses of the identifying witnesses, has no insurable interest in such automobile against its theft.

Appeal from Coffey district court; ISAAC T. RICHARDSON, judge. Opinion filed July 10, 1926. Reversed.

*Ralph T. O'Neil, John D. M. Hamilton, Barton E. Griffith,* all of Topeka, and *Ray S. Pierson,* of Burlington, for the appellant.

*L. H. Hannen,* of Burlington, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action on a policy of insurance purporting to protect an automobile against theft. The main defense was that plaintiff had no insurable interest in the property.

The ostensible facts were these:

Plaintiff resided on a farm about four miles north of Burlington, county seat of Coffey county. In the autumn of 1923 he let it be known that he wished to buy a car. Several dealers from nearby towns called on him and exhibited their cars and quoted prices. A stranger also called on him, giving his name as that of W. K. Jones, and pretending to be a salesman and representative of the French Motor Company of Osage City, a town thirty miles from plaintiff's residence. Jones called four times, at first offering to sell a second-hand car, but eventually he sold plaintiff a new Ford sedan for $773, which was $3 less than the price quoted by the Ford dealer in Burlington, and $1 less than the price asked by the Ford dealer in Melvern, a little town a few miles further away. Jones delivered the car

Automobile Insurance, 44 L. R. A. n. s. 75; 51 L. R. A. n. s. 584; L. R. A. 1915E, 579; L. R. A. 1917F, 543; 14 A. L. R. 215; 19 A. L. R. 171; 24 A. L. R. 740; 30 A. L. R. 662; 38 A. L. R. 1162. Motor Vehicles, 28 Cyc. p. 50 n. 59.

at plaintiff's farm. Plaintiff testified that he paid the entire price in cash, as he had no confidence in banks and had accumulated the money in the course of a year and kept it in his house. He did not take a receipt for the money, nor did he require or obtain from Jones a bill of sale for the car. Jones disappeared and has never since been heard of. Jones had no connection with the French Motor Company of Osage City and the car had never passed through its hands. Plaintiff applied for a license and in due time received it from the secretary of state. He also took out a policy of insurance issued by defendant to protect the car against theft. A month later the car was stolen, and, like Jones, it has never since been heard of. Plaintiff thinks he correctly read the motor number on the car, and on that supposed number, 8259052, the automobile license was issued and the insurance policy executed. It developed, however, that no Ford sedan ever bore such number; those figures were the engine number of a new Ford one-ton truck purchased from a regular Ford dealer in September of the same year by a farmer in North Carolina and still owned by him.

In his petition plaintiff admitted that he had never received a bill of sale for the car from Jones. Attached to his petition was a copy of the insurance policy, which, among other matters, provided:

"This policy is subject to additional conditions printed on back hereof.

"Perils insured against  . . .

"(c) Theft, robbery or pilferage,  . . .

"Warranties by the Assured.

"The assured's occupation or business where the subject of this insurance is used in connection therewith, the description of the automobile insured, the facts with respect to the purchase of same, the uses to which it is and will be put, and the place where it is usually kept, as set forth and contained in this policy, are statements of facts known to and warranted by the assured to be true, and this policy is issued by the company relying upon the truth thereof.  . . .

"*Title and ownership.* This entire policy shall be void unless otherwise provided by agreement in writing attached hereto;

"(a) If the interest of the assured in the subject of this insurance be other than unconditional and sole ownership  . . ."

Defendant's answer denied plaintiff's ownership of the automobile, raised the point that plaintiff did not have an insurable interest in it, and stressed the clause in the policy touching "Warranties by the Insured," quoted above, and alleged that plaintiff had breached those warranties by giving defendant an incorrect descrip-

tion of the car, particularly with reference to the number of the motor.

On this joinder of issues the cause came on for trial. Defendant's objection to the introduction of evidence was overruled. The jury returned a verdict for plaintiff for the full amount of the policy and judgment was entered accordingly.

Defendant appeals, assigning various errors which chiefly center about the question whether plaintiff had an insurable interest in this automobile.

The statute, R. S. 8-117, makes it unlawful for any person to buy an automobile from anybody except a regular dealer having an established place of business unless the seller is identified by two acquaintances of the buyer and unless he obtains from the seller a bill of sale in writing, reciting a description of the car, its make, style, year of model, and engine number, and giving the full name and address of the seller, and signed also by the identifying witnesses and giving their addresses. If the automobile which is the subject of the purchase and sale is a second-hand car, the buyer, in addition to the provisions of R. S. 8-117 summarized above, must notify the county sheriff and a police officer of the nearest town of his purchase and give those officials a comprehensive description of the car. (R. S. 8-118.)

One cannot read these statutes without coming to the conclusion that their purpose was to minimize the possibility of permanently depriving owners of automobiles of their property by theft. A car is easily stolen. Its speed will carry its taker hundreds of miles away in one round of the clock. And so the legislature very properly has prescribed this statutory mode for the sale, exchange, or barter of automobiles, to curtail the chances of their successful larceny and sale by thieves, and for enlarging the possibilities of recovering and restoring to their owners automobiles which are stolen. The statute also is designed to protect gullible people from buying stolen cars and from irresponsible vendors of whom nothing is known except what they choose to say or pretend about themselves. In *Miller v. Insurance Co.*, 117 Kan. 240, 242, 230 Pac. 1030, in discussing the Missouri statute on this general subject, it was said:

"If he had caused a record of the transfer to be made with the secretary of state inside of five days the insurance company would have had opportunity to protect itself against Cohen's fraud. One purpose of the statute is ob-

viously to make it difficult for a thief to dispose of a stolen car, but it has other beneficial effects, one of them being to prevent the tricking of a would-be purchaser into paying for a car after his supposed vendor has parted with the title. If, as the evidence tends to show, the insurance company was tricked out of its money by Cohen through a device which was made available to him because of the failure of the plaintiff to take the steps required by the statute in order that his purchase should be valid, the superior equities are clearly with the insurance company; it is within the protection of the statute, and the provision that a sale of a car made without an indorsement and delivery of the registration certificate, and without a record of the change of ownership with the secretary of state, shall be fraudulent, operates in its favor against the plaintiff."

Assuming the truth of plaintiff's evidence touching his acquisition of this automobile, as we are bound to do since the jury gave it full credence, nevertheless he did take that car from the elusive Jones in total disregard of the statute designed to protect him against being defrauded, and designed to restrict traffic in stolen automobiles and the losses attendant thereon, for the benefit of everybody, including the defendant insurance company. It, too, is entitled to the protection of the statute, since no inconsiderable factor in determining its insurance rates is based upon the percentage of recoveries of stolen automobiles covered by its policies through the efficacy of the statute governing their transfer and sale. By buying this car from a stranger, not a dealer having an established place of business, without knowing his address, without his being identified by available witnesses, without a bill of sale giving an accurate description of the car, plaintiff rendered it virtually impossible for this defendant company to recoup any sum it might pay him for its theft. Without these clues, which the statute required plaintiff to take and preserve when he bought the automobile, the defendant has no chance to recover the stolen property; and the state has little chance to bring Jones to justice for defrauding the plaintiff, or to capture and punish the thief who deprived plaintiff of it.

In view of this, can we say that plaintiff had an insurable interest? The sale to him was illegal. Was it also void? The statutes of some states expressly so state. (Rev. Stat. Mo. 1919, ¶ 7561, cited in *Motor Co. v. Warren*, 113 Kan. 44, 213 Pac. 810.) Our statute does not expressly say so, but so far as concerns parties like defendant who had a right to contract on the assumption that the statute concerning the transfer and vesting of title had been complied with, logic and justice would seem to require a similar conclusion to be deduced from a breach of it. In *Insurance Co. v. Todino*, 111 Ohio

St. 274, 277, where a husband had given his wife an automobile and had caused the insurance policy protecting the vehicle from theft to be indorsed to her, but had failed to give her a bill of sale as the statute required, it was held she had no insurable interest in the car. That statute did not expressly declare that a sale made in violation of its terms was void. It did provide that "any such bill of sale not verified before delivery shall be null and void." The opinion is instructive and convincing. In part, the Ohio court says:

"The authorities are plentiful that courts always look to the language of a statute, its subject matter, and the wrong or evil it seeks to remedy or prevent, or, in other words, the purpose sought to be accomplished by its enactment, to determine whether a transaction governed by such statute is void if the statutory requirements be not followed, or whether (there being no direct provision making such transaction void) the penalty provided by the statute for the failure to observe it is all that is to be exacted.

"A distinction has been recognized between statutes designed for the protection of the public and those designed primarily for the raising of revenues. The courts are in accord that where a statute is enacted to protect the public against fraud or imposition, or to safeguard the public health or morals, a contract in violation thereof is void, even though a money penalty also is exacted.

"The statute under consideration is not a revenue-raising measure. No fees of any consequence are paid or are payable. It was not designed to prevent the sale of automobiles. Its sole purpose was to prevent, in so far as possible, the stealing of automobiles, which, because of the opportunity to commit the crime and escape detection, unfortunately had become, and is still, so prevalent as to be classifiable as a near industry. The declaration of the general assembly which passed the act is that its purpose was and is to prevent traffic in stolen cars.

"In view of the requirement of the statute that a bill of sale shall be verified before it can have force and effect, how can it be successfully argued that no bill at all may have force and effect? Omission of action is not action. Nonperformance is not performance. Failure to do a thing is not the doing of it. The absence of a paper is not the equivalent of a paper. As title cannot pass without a verified bill of sale, and in this transaction no bill of any kind or character was executed by the donor or filed by the donee (plaintiff), how can it be claimed that at the time of the theft plaintiff was the sole and unconditional owner of the car, within the meaning of the policy?" (p. 276.)

In *Hennessy v. Automobile Owners' Ins. Ass'n* (Tex. Civ. App.), 273 S. W. 1024, plaintiff sought to recover on a policy of insurance on a second-hand automobile which he had sold to one Chisholm, retaining a mortgage on the vehicle to secure notes given by the purchaser in part payment. After this sale, the defendant insurance company issued its policy on the car against fire and theft. The car was stolen and destroyed by fire, and payment on the policy was

resisted on the ground that in the acquisition of the car by plaintiff and in its sale to Chisholm there had been a breach and total disregard of a penal statute requiring a sale or trade of a second-hand automobile to be evidenced by an accompanying bill of sale and other regulatory directions. (Penal Code, Texas, 1925, art. 1435.) It was held that neither the vendor nor the vendee had an insurable interest in the car, although following its theft and destruction a bill of sale was procured and recorded in belated compliance with the statute.

The same principle was recognized in *Pope v. Glens Falls Ins. Co.*, 136 Ala. 670; and in *State ex rel. Insurance Co. v. Cox*, 307 Mo. 194, 37 A. L. R. 1456, although in that case the statute itself did expressly denounce as void a sale in violation of its terms.

As we have seen, an important rule of public policy is involved in this case. The statute (R. S. 7-118) was enacted to protect the public against fraud, to limit the amount of mischief wrought by automobile thieves, to aid in bringing such thieves to justice and to facilitate the recovery of stolen automobiles; and it must be held that the sale and barter of automobiles in disregard of the statute confers no insurable interest on the vendee. It follows that the judgment must be reversed on the principal matter involved herein.

In anticipation of such probable conclusion of this court, the appellee seeks to make something out of the minor point that plaintiff had good title to the accessories purchased by plaintiff and attached to the car, and there should be no question of his insurable interest in them. It does not appear that this point was urged below; but aside from that, if plaintiff had complied with the law in acquiring the automobile, the defendant would have stood some chance to recover it, accessories and all, and thus recoup its loss for whatever sum it might have to pay on this policy—whether on the car itself, or merely on the accessories. As the case stands, however, and through the fault of the plaintiff, it has not a chance of recoupment. Granting that plaintiff's acquisition of this automobile was as thoroughly innocent of guile as his evidence disclosed and the jury believed, his want of sophistication touching the wiles of designing men (other than bankers) and the consequences flowing therefrom must be borne by himself, and cannot justly be transferred to the defendant insurance company.

The judgment is reversed and the cause remanded with instructions to enter judgment for defendant.