MYRTLE EVENS, RESPONDENT (PLAINTIFF), v. THE HOME INSURANCE COMPANY OF NEW YORK, A CORPORATION, APPELLANT (DEFEND-ANT).—82 S. W. (2d) 111.

St. Louis Court of Appeals.   Opinion filed May 7, 1935.

*Taylor, Chasnoff & Willson* and *J. H. Cunningham, Jr.* for appellant (defendant).

934

*Terry, Terry & Terry* for respondent.

HOSTETTER, P. J. This suit was begun in the Circuit Court of Jefferson County on the 17th day of July, 1931, and is an action to recover damages to the amount of $700 under a policy of insurance issued by defendant on a Nash sedan automobile which was destroyed by fire on the 27th day of February, 1931.

The policy of insurance was issued on the 3rd day of March, 1930, insuring the automobile against the peril of fire, among other things, in consideration of the premium paid by the assured amounting to $12.95.

The petition was in conventional form.

Defendant's answer consisted of, first, a general denial; second, that the plaintiff was not the sole and unconditional owner of the car at the time of the issuance of the policy or at any time thereafter, and that the plaintiff did not acquire any title or interest in the car at any time and had no insurable interest at the time the policy was issued and delivered and that the interest of the plaintiff in said car was not truly stated and that therefore the policy of insurance was void and of no force, and that the policy contained the following provision:

"This entire policy shall be void if the assured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof; or in case of any fraud, attempted fraud or false swearing by the assured touching any matter relating to this insurance or the subject thereof, whether before or after a loss."

"This entire policy shall be void . . . if the interest of the assured in the subject of this insurance be or become other than unconditional and sole lawful ownership. . . .;" third, that the car, shortly after the policy was issued, was encumbered with a chattel mortgage and that the policy contained the following provision:

"Unless otherwise provided by agreement in writing added hereto, and except as to any lien, mortgage or other encumbrance specifically set forth and described in paragraph D of this policy, this company shall not be liable for loss or damage to any property insured hereunder while subject to any lien, mortgage or other encumbrance;" fourth, that the plaintiff warranted the automobile to be fully paid for and free from chattel mortgages, which warranties, being incorrect, rendered the policy void; fifth, that the plaintiff warranted the actual cost of the car to be $800, when, as a fact, it was only $650, by reason of which the policy became void, and that the policy contained the following provision:

"This entire policy shall be void if the assured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof . . .;" sixth, that there was another policy issued by another insurance company insuring this particular car without defendant's knowledge, which other policy was in full force at the time of the fire and which rendered this policy void and, seventh, that defendant made a tender of $12.95, the amount of the premium paid, for the use of plaintiff.

The plaintiff's reply contained a denial of the allegations of the new matter contained in the answer and also, an averment that if there were forfeitures in the policy that all of the forfeitures were waived by the defendant in that it failed to insist upon such forfeitures

and accepted and received and converted to its own use the wreck and remnants of the automobile left after the fire.

Plaintiff testified that she owned a 1928 Nash sedan which she purchased from Mr. Mallicoat of De Soto, Missouri, making the the trade herself and later getting a certificate of title to the car from the Secretary of State; that she received the certificate of title a day or two after its date (March 27, 1930); that she recalled sending to the Secretary of State for the certificate of title but was unable to recall the exact date; that after she had purchased the car at De Soto she came back to Herculaneum and the defendant's local underwriting agent came out and looked at the car and issued and delivered to her the policy of insurance sued on; that on the night of February 25, 1931, she, in company with Cleo Blum, her brother's wife, went to Hopewell in Washington County, Missouri, to visit in the home of her sister, when the car caught on fire and burned from cause unknown.

On cross-examination she stated that her husband paid for the car, but that she made the deal herself; that at the time the deal was made she signed no papers of any kind and that there were no papers delivered to her at that time nor on that day; that the first thing she received thereafter was her certificate of title that came to her through the mail; that her husband handled the matter of procuring insurance for her, but she had told him to do it and did not remember having had any conversation with the insurance agent at the time of the issuance of the policy sued on; that they traded in their old car and gave Mr. Mallicoat $500; that she did not remember whether it was paid in cash or not, as her husband handled that part of it; that he paid for the car; that she did the trading with Mr. Mallicoat herself and looked over the new car and that her husband did not even look at it; that she didn't remember about the payment of the $500, or how it should be paid, that her husband attended to that part of it and any arrangement he made in that connection was satisfactory to her.

On redirect-examination she testified that after the fire she made proof of loss and mailed it to the company, but had never been paid for the loss; that the insurance company sent her a letter, denying liability, with a check for $13.73, covering the premium, and that she returned the check to the insurance company, with a letter, to which she got no reply.

J. E. Geisler, agent for the Home Insurance Company, who wrote the policy sued on, testified that after looking at the car he decided that $700 would be the proper amount of insurance on it; that he saw the car several times after he issued the policy on it and that they took unusually good care of the car and it was nearly a year from the time he issued the policy before the car burned.

On cross-examination he testified that plaintiff's husband was the one who told him that the car cost $800, that being the amount set forth in the policy as the cost of the car; that plaintiff was not present when the policy was ordered; that he wrote it as Mr. Evens wanted it written; that, while he was not positive how he put the question, he thinks he asked Mr. Evens whether or not there was a lien on the car and that Mr. Evens asked him whether his note was the same as cash and that he told Mr. Evens that the note would be the same as cash provided there was not any mortgage on the car; that Mr. Evens did not say anything about a mortgage, but said it was a note with his name and his wife's name on it; that he would have written the policy for the same amount if he had known there was a mortgage on the car in favor of some third person, but would have put a loss payable clause on it; that he was not positive that there was any other insurance on the car, but that he read the warranties appearing on the face of the policy to Mr. Evens and Evens answered them; that Evens did not say there was any other insurance on the car.

On redirect-examination he testified that he did not read all three pages of the policy at the time the policy was ordered; that he asked Mr. Evens if the car was encumbered and Mr. Evens said, "If you give a note without a mortgage, is that the same as cash?" and that he told Mr. Evens, yes, that that was not an encumbrance on the car and would be the same as cash.

Other witnesses were called by plaintiff, who testified as to the circumstances under which the car caught fire and burned and that the car at the time of the fire was worth $700.

Plaintiff's husband, George C. Evens, testified that after the purchase of the car that he took up the matter of insurance with Mr. Geisler; that the reasonable market value of the car at that time was $1000; that he saw the remains after the fire and the junk value was about $25; that he assumed no jurisdiction over it.

On cross-examination he testified that his signature appeared on defendant's Exhibit C, being a chattel mortgage on the automobile involved; that the car was made in 1928, but that he understood it to have been a 1929 model; that he told Mr. Geisler that he thought, after figuring it up, that the car cost him about $1000; that he did not think he had a conversation with Mr. Geisler about how he paid for the car; that he could not state what the total cost of the car was to him, but he figured it out to have cost him $1000 by placing a value upon the car which he traded in; that he received from the C. I. T. Corporation, notice of installment payments and defendant's Exhibit D (being a certificate of insurance issued by Export Insurance Company to C. I. T. Corporation for the account of all interests, in the sum of $520, and insuring

the automobile involved against loss and damage by fire); that he received said certificate of insurance about May 1, 1930, and did not read it and did not think that Mrs. Evens (plaintiff) ever knew anything about it; that he went to see Mr. Mallicoat (the dealer from whom the car was purchased) on February 29th, the Sunday following the fire, and learned on that day for the first time of the existence of the Export Insurance Company coverage upon the car; that he wrote the letter, defendant's Exhibit E, which is as follows:

"Herculaneum, Mo.
"Feb. 27, 1931.

"Mr. D. A. Malcott,
"De Soto, Mo.
"Dear Mr. Malcott:—
"The Nash Sedan I bought of you took fire and burnt last night.

"The remains are in Washington County near Hopewell. Are you still writing for the insurance Co. Do you hold my policy.

"When does it expire. I have one more payment March 1st so will hold up same until I hear from you, and if you want to go look at car let me know and I will give you directions or Bud or I will go with you or should we try to get it home. So will leave same to you to look after as I never saw the policy and don't know how it reads or who wrote it.

"Yours very truly,
"G. Claud Evens."

that at the time he reported the loss he thought Mr. Mallicoat was holding the insurance policy; that in writing him he made mention of the insurance policy; that he had an insurance policy at home which he got from Mr. Geisler (appellant's agent), but he had reference to Mr. Mallicoat having it; that he knew that Mr. Geisler wrote the Home Insurance Company policy and that it was delivered to him in Herculaneum.

On redirect-examination he testified that he signed defendant's Exhibit C (being a chattel mortgage on the automobile in question) when it was a blank piece of paper; that Mr. Mallicoat was with him when he signed the paper, and Mr. Mallicoat told him that he would like to have a little money, and asked the witness to sign the paper; that he did not then know that it was a chattel mortgage; that he did not then know anything about insurance on the car, and that the first time he saw the policy (Export Insurance Company) issued through the C. I. T. Corporation, was when he went by on February 27th, and was talking to Mr. Mallicoat; that he did not think that he told Mr. Geisler that there was no mortgage on the car, but that he would have told him that if he had asked him; that Mr. Geisler asked him if the car was paid for, and in whose name the car stood, and he told Mr. Geisler that the car belonged to his wife, and that

there was a note which he had taken over with a few payments on it; that he did not give any note at the time, and there was not any lien on the car at that time; that he never gave a lien on the car; that he did not know that anybody claimed a lien on the car until the question arose after the fire; that he thought he was giving Mr. Mallicoat just a note; that he considered the car had been paid for, but he owed Mr. Mallicoat on an account; that neither he nor his wife ever sent anything to C. I. T. Corporation.

On recross-examination he testified that he made one payment to C. I. T. Corporation after the car burned; that it was not until after the fire that he knew that they held an obligation, as he considered it an obligation to Mr. Mallicoat; that whatever obligation C. I. T. Corporation held had not been paid until after the car burned; that at the time the car burned there was one payment due in the sum of $29 and some cents, which was paid to C. I. T. Corporation after the fire; that he did not understand that it was a payment on the car; that he owed Mr. Mallicoat a note besides that for an amount around $200; that the question of whether said indebtedness to Mallicoat was in connection with the purchase of the car depended upon the way Mallicoat agreed to handle it.

The policy sued on was read in evidence by plaintiff and was dated March 3, 1930, and expired on March 3, 1931, and contained the clauses set out in defendant's answer and insured the plaintiff in the sum of $700 against loss by fire of said Nash sedan.

Plaintiff's amended petition contained an allegation that "at the time of the issuance of the policy and at all times from that date, she was the owner of said automobile." Certified copies of papers offered by defendant showed that the Nash sedan in controversy was formerly owned by C. V. Tibbitts, whose certificate of title issued from the office of the Secretary of State was dated March 5, 1928; that the date of the assignment of said certificate of title by said C. V. Tibbitts to the De Soto Motor Company, of which D. A. Mallicoat was manager, was March 18, 1930, and that the date of the reassignment of said·certificate of title by the De Soto Motor Company to plaintiff was March 18, 1930, and that the date of plaintiff's application to the Secretary of State for a certificate of title on said Nash sedan was March 18, 1930, and that the certificate of title on said automobile was issued to plaintiff from the office of the Secretary of State on March 27, 1930.

Defendant offered in evidence a chattel mortgage dated March 1, 1ᵣ ᴊ, on the Nash sedan given by plaintiff's husband, George ⌐ ﬨvens, ᵗo the De Soto Motor Sales Company to secure the payment of the balance of purchase money due on the car, to-wit; $355.20, payable in twelve·monthly payments of $29.60 each, which offer was excluded upon objection made by plaintiff.

Defendant offered in evidence a certificate of insurance under policy No. B 219 on the Nash sedan to the C. I. T. Corporation by the Export Insurance Company for $520 to cover fire and theft loss in which George C. Evens is described as purchaser, dated March 1, 1930, expiring one year after date, which, upon objection was excluded by the trial court.

D. A. Mallicoat testified that the deal with Evens on the Nash sedan was made about the first of March, 1930, and that he did not sign the old certificate of title over to plaintiff, Mrs. Evens, until about two weeks thereafter; that the purchase price of the automobile involved was $650 made up of a down payment of $35, a trade in, and a balance of $355.20 to be paid in twelve monthly payments, $29.60 each, represented by a note; that he does not think he filled in anything on the chattel mortgage after Mr. Evens signed it, but he could not state for sure, as sometimes he fills in some things.

At the close of plaintiff's testimony in chief defendant offered an instruction in the nature of a demurrer to the evidence and a like one at the close of all the testimony, both of which were refused by the court.

The jury returned a verdict in favor of the plaintiff for the sum of $700 upon which a judgment was rendered, and, after an ineffective motion for a new trial, the defendant brings the cause to this court by appeal for review.

The defendant makes numerous assignments of error covering exclusion of testimony by the trial court and criticism of the instruction given for the plaintiff and the exclusion of chattel mortgages executed by the husband of plaintiff and the alleged warranty by the assured that the automobile was fully paid for and that the amount of the purchase price was incorrectly stated as being in excess of what it really was and also that the plaintiff at the time of the issuance of the policy had no insurable interest in the automobile in controversy and was not the sole and unconditional owner thereof.

Having reached the conclusion, after a careful consideration of the very able briefs furnished by counsel for the respective parties, that the trial court should have sustained the demurrer to the evidence offered at the close of all the testimony, we will only discuss such assignments of error which, in our opinion lead us to that conclusion. Section 7774, Revised Statutes Mo. 1929 (Mo. Stat. Ann., Sec. 7774, p. 5193), relating to transfer and sale of registered vehicles provides, *inter alia,* the following:

"In the event of the sale or transfer of ownership of a motor vehicle or trailer for which a certificate of ownership has been issued, the holder of such certificate shall endorse on the same an assignment

thereof, with warranty of title in form printed thereon and prescribed by the commissioner with a statement of all liens or encumbrances on said motor vehicle or trailer and deliver the same to the buyer *at the time of the delivery to him* of said motor vehicle or trailer. The buyer shall then present such certificate, assigned as aforesaid to the commissioner, at the time of making application for the registration of such motor vehicle or trailer, whereupon a new certificate of ownership shall be issued to the buyer.''

Also ''it shall be unlawful for any person to buy or sell in this State any motor vehicle or trailer registered under the laws of this State, unless, at the time of the delivery thereof, there shall pass between the parties such certificate of ownership with an assignment thereof, as herein provided, and the sale of any motor vehicle or trailer registered under the laws of this State, without the assignment of such certificate of ownership, shall be fraudulent and void.''

By Section 7792, Revised Statutes Missouri 1929 (Mo. Stat. Ann., Sec. 7792, p. 5245), a violation of the last mentioned requirement is made a misdemeanor.

It clearly appears from the testimony adduced that the sale was made to plaintiff on or about the first day of March, 1930, and that she took immediate possession of the car; that the same was a used car of the 1928 vintage and that the registered owner was C. V. Tibbitts, whose certificate of title was dated March 5, 1928; that no certificate of any kind was given to the plaintiff at the time of the sale of the car; that she left no directions with Mr. Mallicoat of the De Soto Motor Sales Company to procure a certificate of title or an assignment of the Tibbitts' certificate of title; that Tibbitts' certificate of title was assigned to her on March 18, 1930, and that her certificate of title issued from the office of the Secretary of State bears date of March 27, 1930.

It follows that plaintiff acquired no title to the car at the time of the consummation of the deal with Mallicoat, and, therefore, had no insurable interest in the car at the time of the issuance of the policy of insurance and was not the sole and unconditional owner of same which was also required by the terms of the policy.

In the leading and pioneer case of State ex rel. Continental Fire Ins. Co. v. Cox, 306 Mo. 537, 268 S. W. 87, the above quoted portions of the statutes in relation to motor vehicles were discussed at great length and kindred statutes relating to other subjects, and, it was held that the provisions of the statute in respect to the sale and transfer of motor vehicles ''for which a certificate of ownership has been issued'' are mandatory and, unless strictly complied with the purchaser acquires no title. In that case, which was one in which the Supreme Court was reviewing an opinion of the Springfield Court of Appeals in *certiorari,* the facts were very similar to the facts in the *instant* case.

The original suit passed on by the Springfield Court of Appeals was one wherein the plaintiff sought a recovery from an Insurance Company on account of a fire insurance policy covering an automobile. It was a secondhand automobile and the seller gave to the buyer a bill of sale containing certain data similar to that used in the officially issued certificates of title, and, in addition thereto, the officially issued certificate of title was delivered to the purchaser but the blank form·of assignment on the back of such certificate was not executed at the time of the sale.

The Springfield Court of Appeals held that the delivery of such bill of sale and such officially issued certificate of title, though the assignment clause on the back thereof was unsigned, constituted a substantial compliance with the statute so that the purchaser thereunder acquired an insurable interest in the automobile and sustained his recovery against the insurance company on account of a loss by fire.

The Supreme Court, however, held otherwise and quashed the opinion of the Springfield Court of Appeals and held that the attempted sale was null and void because not carried out in compliance with the terms of the statute and that the purchaser acquired no insurable interest in the automobile and that the policy of insurance issued to him on said automobile was void *ab initio*. This ruling has been followed in many cases. [Mathes v. Weschester Fire Ins. Co. (Mo: App.), 6 S. W. (2d) 66; Weaver et al. v. Lake et al. (Mo. App.), 4 S. W. (2d) 834; Isaacson v. Van Gundy (Mo. App.), 48 S. W. (2d) 208; La Font v. Home Ins. Co., 193 Mo. App. 543, 182 S. W. 1029; Avery v. Mechanics Ins. Co. (Mo. App.), 295 S. W. 509; Williams v. Peoples etc. Ins. Co. (Mo. App.), 35 S. W. (2d) 922; Prudential Ins. Co. v. German Mut. Fire Ins. Assn. (Mo. App.), 60 S. W. (2d) 1008; Morris v. Firemen's Ins. Co., 121 Kan. 482, 247 Pac. 852; Perkins v. Bostic, 227 Mo. App. 352, 56 S. W. (2d) 155; Quinn v. Gehlert (Mo. App.), 291 S. W. 138; Sullivan v. Gault (Mo. App.), 299 S. W. 1116, 1. c. 1117; Boyer v. Garner (Mo. App.), 15 S. W. (2d) 893.]

Such is the holding in other jurisdictions which have statutes similar to Missouri, making such sales of automobiles, in noncompliance with statutory requirements, unlawful, fraudulent and void.

The underlying reason for such holding is that such statutes are designed for protection of the public to prevent traffic in stolen cars, to aid in the apprehension of criminals, and to protect the innocent and guileless from the machinations and wiles of the wicked.

In Insurance Co. v. Todino, 111 Ohio St. 274, 277, where a husband had given his wife an automobile and had caused the insurance policy protecting the car against theft to be endorsed to her but failing to give her a bill of sale such as the statute prescribed, it

was held that she had no insurable interest in the car and was denied a recovery against the insurance company for that reason after theft of car. The Ohio statute did not expressly declare, as the Missouri statute does, that a sale made in violation of its terms was void, but it did provide that "any such bill of sale not verified before delivery shall be null and void."

In Hennessy v. Automobile Owners Ins. Assn. (Tex. Civ. App.), 273 S. W. 1024, it is held that in a sale of a secondhand automobile without a compliance with the Texas statute in respect to such transfers the purchaser had no insurable interest in the car and was therefore denied a recovery against the insurance company after its loss by theft and fire.

In Hessen v. Iowa Auto. Mut. Ins. Co., 195 Iowa, 141, it was held that the purchaser of a stolen automobile has no insurable interest therein within the meaning of a policy which provides that it is void if the insured be other than the *sole and unconditional owner*. The court, in discussing this case, uses this language, viz.: "An insurable interest is necessary to the validity of a policy regardless of its subject-matter. If no insurable interest exists the contract is void and no recovery can be had thereon in case of loss."

In Morris v. Firemen's Ins. Co., 121 Kan. 482, the court held that a farmer buying an automobile from a party calling on him at his farm and claiming to be a salesman for Motor Company in a nearby town, paying cash for it, but receiving no bill of sale containing data, as required by the statute of that State, did not acquire an insurable interest therein and for that reason was denied a recovery on an insurance policy against theft of the car which occurred about a month after the issuance of the policy.

The court, in that case, commented favorably on such statutes, particularly the Missouri statutes, holding that there was an important rule of public policy involved in the case under review using this language:

"One cannot read these statutes without coming to the conclusion that their purpose was to minimize the possibility of permanently depriving owners of automobiles of their property by theft. A car is easily stolen. Its speed will carry its taker hundreds of miles away in one round of the clock. And so the Legislature very properly has prescribed this statutory mode for the sale, exchange, or barter of automobiles, to curtail the chances of their successful larceny and sale by thieves, and for enlarging the possibilities of recovering and restoring to their owners automobiles which are stolen. The statute also is designed to protect gullible people from buying stolen cars and from irresponsible vendors of whom nothing is known except what they choose to say or pretend about themselves."

Likewise, the policy of insurance in the instant case was void on

the date of its issuance because of a violation of the clause in said policy providing that "if the interest of the insured in the subject of the insurance be or become other than unconditional and sole lawful ownership" then "this entire policy shall be void." [Fulbright v. Phoenix Ins. Co., 329 Mo. 207, 44 S. W. (2d) 115; Barnard v. National Fire Ins. Co., 27 Mo. App. 26; Cole v. Niagara Fire Ins. Co., 126 Mo. App. 134, 103 S. W. 569; Buhlinger v. United Firemen's Ins. Co. (Mo. App.), 16 S. W. (2d) 699; Miller v. Great American Ins. Co. (Mo. App.), 61 S. W. (2d) 205; Froehly et al. v. North St. Louis Mut. Fire Ins. Co., 32 Mo. App. 302; Ohio Farmers Ins. Co. v. Todino, 111 Ohio St. 274, 145 N. E. 25.]

Therefore, if the declaration of plaintiff's interest in the car to be that of "unconditional and sole lawful ownership," as evidenced by her acceptance of the policy containing that provision, was not true, then for that reason the policy was void *ab initio*. Therefore, no subsequent change in the character of plaintiff's interest in the car, even though it enlarged to the *status* of "unconditional and sole lawful ownership," could have put life into the dead policy without defendant's consent, and the record is barren of any proof of such consent.

There is no element of waiver disclosed by the testimony on the part of the defendant. Plaintiff does aver in her reply that "if there were forefeitures in the said policy" that they were waived and that defendant took the remnants of the burnt automobile and converted them to its own use. No testimony was adduced, as disclosed by the record, in support of this charge. Plaintiff's husband testified that the remnants of the burnt car were worth $25 and "that he assumed no jurisdiction over it."

There is no testimony that defendant or its agent had any knowledge of the non-passage of the title to the automobile to plaintiff until after the fire, and, upon receipt of proof of loss mailed to it by plaintiff it mailed a letter to her denying liability and sent her a check for $13.73, return premium and interest, which she sent back to it and that amount was put up in court for the use of plaintiff after suit was brought.

It follows that the judgment of the trial court in favor of plaintiff should be reversed, and it is so ordered. *Becker* and *McCullen, JJ.;* concur.