Emmett L. MELUGIN, Plaintiff-Respondent,

v.

IMPERIAL CASUALTY AND INDEMNITY COMPANY OF OMAHA, NEBRASKA, a Corporation, Defendant-Appellant.

No. 23232.

Kansas City Court of Appeals Missouri.

March 6, 1961.

Lewis W. Sanders, Kansas City, for appellant.

Speers & Bevins, Austin B. Speers, Howard W. Bevins, Kansas City, for respondent.

MAUGHMER, Commissioner.

The suit is for damages to plaintiff's tractor-truck caused by fire, which loss allegedly was covered under a policy of insurance issued by defendant. The verdict was for plaintiff in the amount of $4,600 (full amount of coverage, less $8,400 paid directly to mortgagee) with accrued interest of $540.50. The jury also found vexatious refusal to pay and allowed $460 damages therefor, plus a $1,000 attorney fee. However, these allowances were remitted in the trial court and are not, therefore, involved in this appeal.

The appellant-defendant makes four assignments of error. First. Plaintiff placed a reconditioned motor in the tractor, failed to register the change, as required by law, and as a result had no insurable interest

in the tractor, and so failed to make a submissible case. Second. Defendant's motion for directed verdict should have been sustained because the value of the tractor was not established and the evidence did not justify submission of total loss. Third. The verdict was the result of bias and prejudice on the part of the jury, and Fourth, material hearsay evidence was improperly admitted.

The plaintiff, E. L. Melugin, is a truck owner and operator. Since 1946 he has operated from one to seven trucks in his own name and with his wife under the trade name M-G-N. Food Products, Inc. The cargoes were primarily meat and were hauled long distances.

In October, 1956, plaintiff, through G. Bartling & Company, insurance agents and brokers, Kansas City, Missouri, purchased a Pacific National Insurance Company policy covering his three trucks for a period of one year. Item No. 2 was therein described as a 1953 Freightliner Tractor NHRBS 115902—insurance limit $13,000. Item No. 3 listed a 1950 Mack Tractor—insurance limit $8,000. The insured had difficulty with the motor in the Freightliner and about June, 1957, the Cummins Motor Company of Kansas City overhauled the motors and placed the engine from the Mack truck into the Freightliner.

Section 301.370, V.A.M.S. provides: "2. The owner and the person removing and replacing such motor or engine shall join in an affidavit showing the number of the motor or engine removed, the date of removal, the reason for removal, and a description of the motor or engine replaced in the vehicle.

\*      \*      \*      \*      \*      \*

"4. The affidavit, together with the original certificate of title, shall be sent to the director of revenue at Jefferson City, Missouri, with a fee of one dollar for registering such change of motor or engine. The director of revenue shall file the affidavit and certificate in his office and shall

issue and deliver a new certificate of title to the owner." Neither insured nor Cummins complied with this statutory requirement respecting the change of motors.

This first policy's expiration date was October 17, 1957. It was purchased on time payments. Plaintiff said the agency financed the payments for him through a bank loan. In August, 1957, the Bartling Agency advised plaintiff that his insurance was about to run out. Plaintiff told Mr. Bud Bartling to renew the insurance and asked if any further description of the property was needed and was told no further descriptions were required. A new policy was written and issued by Bartling & Company covering the same three trucks but with Imperial Casualty & Indemnity Company, Omaha, Nebraska, the defendant here, as insurer. The limit of liability in this policy on the Freightliner was $13,000 and on the Mack $8,000, the same as in the 1956 policy. The annual premium was $818. It is this policy which is the basis of the present litigation. Mr. Melugin says he paid part of the premium and offered in evidence two checks payable to Bartling & Company for $200 and $400, which carried notations "Paid in full, 1956 and 1957 balance, and part down payment 1957–58 Insurance". Defendant Company canceled this policy as of December, 1957, and Bartling & Company assigned their Melugin premium indebtedness to defendant, which company made it the basis of its Count 1 counterclaim against plaintiff. It was its claim plaintiff owed $878.93 as of the cancellation date, but the jury found for plaintiff on this item.

On November 20, 1957, plaintiff was in San Francisco, where he had driven one of his trucks. On this same date the 1953 Freightliner with the reconditioned engine, which had been taken from the insured Mack vehicle, was about 16 miles east of Pontotoc, Oklahoma, whence it had been driven by Robert Stout, plaintiff's truck driver, whose whereabouts at the time of trial were unknown to plaintiff. At this last mentioned time and place the Freightliner truck caught on fire and burned.

Highway Patrolman W. E. Larecy of Colby, Oklahoma, testified. He was called to the fire scene and arrived while the truck was burning. He said: "It was completely burnt up", but the court erased this answer. However, he further described the truck's appearance as "Just a bunch of burnt metal, twisted, burnt to a crisp". The officer said the burned vehicle remained there two or three days. It was then hauled away by a tow truck. Mr. Melugin never saw it after the fire and never received any salvage benefits from it. He filed a written proof of loss prepared by himself. He was advised by Bartling & Company to see Vincent & Cook, Insurance Adjusters in Kansas City and did get in touch with Mr. Austin Vincent. Mr. Vincent advised him and also testified, that he had been employed by the insurer to adjust the loss; that he had caused the trailer to be returned to Missouri, but that the burned tractor had been left in Oklahoma. It was Melugin's testimony that $13,000 was a low valuation at the time of the loss. Mr. Vincent's letter of January 20, 1958 to plaintiff contained these statements: "I would appreciate it if you would advise me immediately regarding the exact specifications of your White Freightliner tractor which was destroyed by fire on November 20, 1957. * * * We need this information to aid us in ascertaining the correct value of this machine at the time it was destroyed".

The Seattle First National Bank held a $20,000 mortgage on two of plaintiff's tractors—$8,400 of which was on the Freightliner. Defendant company paid this $8,400 direct to the holder of the mortgage at the time of loss.

In response to written interrogatories defendant company stated the policy sued on was in full force and effect on November 20, 1957, the issuing agent was G. Bartling & Company, premiums in the net amount of $889.76 were paid thereon, the

policy was canceled by the company on December 16, 1957, the loss was investi-gated by Vincent & Cook and $8,401 on the loss was paid to Colorado-Kenworth Corporation.

■ Defendant complains that material, hearsay evidence was improperly admitted. Count 2 of defendant's counterclaim sought recovery for the amount of a draft it issued to Willets, Green & Hays, mortgagee, covering a damage loss sustained later by one of plaintiff's tractors. Plaintiff said he was authorized by the mortgagee to cash the check and go ahead and make repairs on the damaged tractor. He offered to prove what the mortgagee's manager said to him in this regard. An objection that the question called for hearsay was sustained but the Court permitted him to say that "he was given authority to sign" the mortgagee's name. We think the witness should have been permitted to relate what the manager said and then the Court and jury could decide if it amounted to authorization. However, defendant proved no damage as to this item. There was no double or second liability shown. We rule the point against defendant.

■■ Defendant says its motion for a directed verdict should have been sustained because (a) The value of the truck was not established and (b) The evidence did not justify submission of total loss. Plaintiff testified that he paid $18,000 for the vehicle, had spent large sums in maintenance and that it was reasonably worth in excess of $18,000 on October 20, 1957, when the policy was issued and when the loss occurred one month later. Besides, $13,000 was the agreed value stated in the policy. As was said in Gould et al. v. M. F. A. Mutual Ins. Co., Mo.App., 331 S.W.2d 663, 667: "As for the trailer itself, we start with the plain proposition that, under the so-called valued policy statute applicable to personalty (Section 379.160 RSMo 1949, V.A.M.S., as amended Laws of 1957, p. 214), defendant will not be heard to deny that, whatever plaintiffs paid for the trailer (Meier

v. Eureka-Security Fire & Marine Ins. Co. of Cincinnati, Mo.App., 168 S.W.2d 127, 134(17)), its actual value at the time of the issuance of defendant's policy, i. e., on October 28, 1957, was the full amount for which it was insured, to-wit, $500. (listing cases so holding)". This contention of defendant is without merit.

■ We are urged to hold that plaintiff had no insurable interest in the tractor at the time of the fire. Defendant insists this is so because the vehicle contained not its original engine, but the engine from the Mack truck. We note that such change had been made prior to the issuance of the policy sued on and the motor number in defendant's policy was apparently copied from the policy issued one year earlier in another company, both of which were written by Bartling & Company, brokers. However, plaintiff was the unquestioned owner of both engines and both tractors. He was not in compliance with the requirements of Section 301.370, V.A.M.S., as quoted supra. The replacement motor should have been stamped "RC", an affidavit filed describing the replacement with the reasons for removal and a new certificate of title would then have been issued by the director. We need not here decide if plaintiff would have been liable to prosecution for failure to so comply. We need not determine if an assignment of the original title would convey proper title to the vehicle in which a replacement motor had been installed or even if the recipient of such an assignment would become vested with an insurable interest therein. Here plaintiff was the true owner of both motors, and both vehicles and motors were covered by defendant's policy. He had an insurable interest therein which would not be destroyed by this nonlegal compliance any more than it would be destroyed by his failure to timely secure a license to operate the vehicle.

■ Appellant insurer invites our attention to some appellate opinions which, it says, lead to a contrary conclusion. In

Evens v. Home Ins. Co. of New York, 231 Mo.App. 932, 82 S.W.2d 111, 117, the policy was issued before the insured received a proper certificate of title. The company denied liability and refunded the premium. It was ruled that insured had no insurable interest at the time of policy issuance and that the contract was void ab initio. This case is easily distinguishable from ours on the facts. Moreover, in our case the company did not refund or tender refund of the premium but rather counterclaimed to recover it. Robertson v. Snider, Mo.App., 63 S.W.2d 508, holds that an assignment of title containing a motor number not that of the vehicle sold is void. We agree with that conclusion.

■ We are in accord with the reasoning in Crawford v. General Exchange Ins. Corporation, Mo.App., 119 S.W.2d 458, 459. In that case claimant received the title but neglected to present it to the commissioner for registration and issuance of a new certificate as required by the law. The court said:

"So much of the statute as requires the buyer to present his certificate to the commissioner of motor vehicles for registration and the issuance of a new certificate deals with the duties of the buyer after the sale has been consummated and title has passed, and there is nothing in the statute to indicate that the vesting of title in the buyer is deferred until the new certificate of ownership is issued. To the contrary, such new certificate, when issued, is merely evidence of the title which the buyer has previously acquired by virtue of the assignment and transfer to him of the original certificate. * * *

"So it follows in the case at bar that plaintiff had an insurable interest in the truck and was the sole and unconditional owner of it within the meaning of the policy both at the time of the issuance of the policy and at the time of the occurrence of the loss".

To the same effect is the ruling in Garrison v. J. L. Querner Truck Lines, Inc., Mo.

App., 308 S.W.2d 315, where plaintiff bought the truck in Texas, received an assignment of the Texas title but neglected to present such certificate to the Missouri department for issuance of a Missouri certificate. It was held that plaintiff's title was good and he could maintain an action for conversion.

■ Defendant's other assignment of error is that the verdict of the jury was the result of bias, passion and prejudice. It reaches this conclusion because it says, the jury ignored documentary proof which resulted in disallowance of defendant's counterclaim for unpaid premium, and the verdict was directly contrary to Instruction No. 5. Plaintiff introduced in evidence two checks totaling $600, a part of which at least was for payment of the premium on the policy sued on and defendant in response to the Interrogatory admitted that "premiums in the net amount of $889.76 were paid thereon". Under this evidence there was a factual dispute which the jury, as it had the right to do, determined adversely to defendant. By Instruction No. 5, the Court instructed the jury: "If you find there was any reasonable question whether or not the White Freightliner had in it Engine No. NHRBS 115902" (the original engine) "at the time of the claimed loss", it should find for defendant. As the case was tried this instruction was improper and should not have been given. However, its inherent impropriety and error were against plaintiff, the prevailing party, in favor of defendant, and hence not cause for reversal. Defendant in effect concedes this is so, but says the jury's refusal to follow the instruction shows its bias and prejudice against defendant. We do not agree. We find no proof of bias and prejudice on the part of the jury and such is not deducible from its conclusions, that plaintiff was owner of the truck at the time of its destruction; that he had an insurable interest therein; that it was totally destroyed; that at the time of its destruction defendant's insurance policy thereon was in full force and effect, and that its value was $13,000. Defendant com-

-pany recognized and acted upon all of these findings insofar as the interest of the mortgagee was concerned and paid $8,400 of the loss direct. We are in agreement with the verdict of the jury and the judgment which -was entered thereon.

Therefore, the judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court. All concur.