No. 29,597.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF BOURBON, *Appellee,* v. J. G. MILLER, W. C. PERRY, ADA LEE MILLER and J. W. MONTEE, *Appellants.*

(294 Pac. 863.)

Opinion filed January 10, 1931.

*A. M. Keene,* of Fort Scott, for the appellants.

*Fred W. Bayless,* of Fort Scott, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action on a bond given by defendants to secure county deposits in the Midwest State Bank of Fort Scott. The bank failed, and county funds amounting to $48,543.55 were not forthcoming on lawful demand. Since the bank failure, however, the county has received $12,149.60 in dividends, which reduced the alleged liability of defendants to $39,243.23 with interest, for which sum plaintiff prayed judgment.

The terms of the bond sued on read:

"WHEREAS, The Midwest State Bank of Fort Scott, Kan., a Kansas corporation, desires to be a county depository for the fund of Bourbon county, Kansas; and

"WHEREAS, The Midwest State Bank desires to protect Bourbon county, Kansas, against loss occasioned by depositing county money in said bank;

. "Now, we, the undersigned, hereby bind ourselves to Bourbon county, Kansas, in the sum of eighty thousand ($80,000) dollars.

"The condition of the above bond is that the said Midwest State Bank shall promptly pay, on the check or draft of the treasurer of said county, any or all money deposited in said bank by said county from time to time, and if the said Midwest State Bank shall so pay them this bond shall be void: otherwise to remain in full force and effect.

"We, the undersigned, hereby agree to protect and hold harmless Bourbon county, Kansas, as against loss occasioned by the depositing of said county money in said bank.

"Witness our hands this 10th day of December, 1926.

"Attest: A. C. BEAN, *Cashier*.    MIDWEST STATE BANK,
(Seal.)        By J. G. MILLER, *President*.
            J. G. MILLER,
"Indorsed on back as follows:   W. C. PERRY,
 "Approved Board of Co. Com.  ADA LEE MILLER,
  "By HENRY DRUM, *Chairman*. J. W. MONTEE."

In their answer defendants admitted the execution of the bond and other matters of no present concern, but alleged that at the time the bond was given the Midwest State Bank was a participant in the bank depositors' guaranty fund of the state of Kansas, and that the county funds were protected by that fund, and—

"These defendants each further alleges that the said plaintiff required from the said The Midwest State Bank of Fort Scott, Kan., and from these defendants the said bond, a copy of which is attached to plaintiff's amended petition and the said plaintiff would not permit funds of Bourbon county, Kansas, to remain on deposit in the said The Midwest State Bank of Fort Scott, Kan., or to be thereafter deposited in said bank unless the said bank executed and delivered to said plaintiff the said bond sued on in this action."

Defendants concluded with a plea that the bond sued on was without consideration, and made and executed in violation of statute, and therefore void and not binding on defendants.

. Plaintiff's motion for judgment on this answer was sustained, and defendants appeal.

The statute relied on by defendants was enacted at a time when legislative confidence in the efficacy of the bank guaranty law was little less than sublime. It reads:

"9-216. That all officers in this state having the custody of county, township, city or school funds, or who may be charged by law with the duty of requiring specific bonds for the security of such funds, when deposited in banks

or trust companies of this state, shall not require such bonds from banks or trust companies participating in the bank depositors' guaranty fund of the state of Kansas, or from banks or trust companies whose entire deposits are guaranteed by a bond of indemnity issued by any surety company authorized by the insurance commissioner of this state, whenever such funds are protected by such guaranty fund or surety company bond of indemnity. (L. 1915, ch. 90, § 1; March 2.)

"9-217. Any officer violating any of the provisions of section 1 of this act, upon complaint made by any person interested to the county attorney of the county in which such officer has his office or resides, shall be removed from his office, and it is made the duty of such county attorney to forthwith commence and prosecute an action in the district court of his county for his removal, and upon conviction thereof such court shall, by its decree, remove such officer from his office and declare said office vacant. (L. 1915, ch. 90, § 2; March 2.)"

Defendants stress the allegation of their answer which averred that plaintiff *required* the bank and these bondsmen to give the bond sued on; that they had no choice but to give it if the county funds were to be permitted to remain on deposit; and that the motion for judgment, being the equivalent of a demurrer, conceded the truth of that allegation.

Defendants invoke the ancient maxim, *Ex pacto illicito non oritur actio*—from an illegal contract no action arises. They cite a wealth of Kansas cases somewhat analogous to the one at bar. In *Mason v. McLeod*, 57 Kan. 105, 45 Pac. 76, which was an action to recover on a written obligation concerning the sale and exchange of a patent right which did not recite that it had been "given for a patent right" and where the vendor had not filed a copy of his letters patent with the clerk of the court as required by statute, it was declared:

"The general rule that courts will not enforce contracts prohibited by statute, or allow the recovery of money or property paid or delivered in pursuance of them, does not apply to vendees of patent rights, for whose protection the statute was enacted." (Syl. ¶ 3.)

In *Pinney v. Bank*, 68 Kan. 223, 75 Pac. 119, it was said:

"Where a statute expressly provides that a violation thereof shall be a misdemeanor, a contract made in direct violation of the same is illegal and there can be no recovery thereon, although such statute does not in express terms prohibit the contract or pronounce it void." (Syl. ¶ 2.)

In a similar case, *Ridgway v. Wetterhold*, 96 Kan. 736, 153 Pac. 490, it was said:

"No recovery can be had on *quantum meruit* for services rendered under contract prohibited by statute." (Syl. ¶ 1.)

In *Morris v. Fireman's Ins. Co.*, 121 Kan. 482, 247 Pac. 852, the defense to an action on a policy of insurance against theft which covered a stolen automobile, it was held that as the plaintiff had obtained the automobile in sheer disregard of the statute regulating the sale of secondhand automobiles the insurance contract could not be enforced.

In *School District v. Roanoke State Bank*, 126 Kan. 122, 267 Pac. 35, where a school district treasurer deposited the district's funds in a bank and exacted a bond in favor of the district for their return, and the bank failed, and where such deposit was unauthorized by law and the treasurer was personally responsible for the funds, and the district had a statutory action against him for their recovery, it was held that the cause of action attempted to be stated by the school district and by its treasurer, as plaintiffs, against the obligors on the bond given by the insolvent bank, was subject to demurrer and the trial court's ruling thereon was correct.

The case of *Ewing v. Halsey*, 127 Kan. 86, 272 Pac. 187, also cited by defendants, was an action for breach of a contract to conduct an exhibition circus of airplanes on Sunday, where the receipts for admissions to the circus constituted the consideration. This court held that no action for damages would lie for breach of a contract which required the defendant to violate a penal statute to perform it.

In 12 L. R. A., n. s. 575-623, is an exhaustive note which collects the leading cases on this general subject—hundreds of them—all to the effect that every contract made in violation of law is void, that no action to enforce a contract made in violation of a statute can be maintained.

A diligent search of the law books discloses nothing to qualify this general rule. The nearest approach to it that we have been able to discover is our own early case of *Bemis v. Becker and others,* 1 Kan. 226, 250, where the validity of a certificate for a share in a drawing of town lots in Wyandotte City was in question. The statute governing such matters provided that before any such drawing should be undertaken a plat of the proposed townsite with appropriate details should be recorded in the office of the register of deeds. In that case that formality had been disregarded. This court said:

"Contracts in contravention of a statute are not to be held void, unless the court, from an examination of the statute, shall judge such to have been the intent of the legislature, though such intent will be presumed, unless the contrary can be fairly inferred." (Syl. ¶ 9.)

At the time the statute relied on by defendants was enacted there could not be two opinions about the legislative intent, or about the public policy which lay behind its enactment. The bank guaranty act at that time had become a political fetish, and to doubt its efficacy to carry the banks through any sort of financial stress was little short of heresy. The courts had no part in that curious chapter of the state's history except to affirm and uphold the power of the legislature to enact such legislation. It is now our duty to uphold the complementary features of that statute invoked by the defendants. The bond sued on was given in violation of its terms, consequently no action can be maintained thereon.

The judgment of the district court is reversed and the cause remanded with instructions to set aside its ruling on the demurrer and to enter judgment for defendants.

SMITH, J., not participating.