No. 32,648

VERNA BUCHANAN, a Minor, by Otis Buchanan, Her Father and Next Friend, *Appellee,* v. SCHOOL DISTRICT No. 134 in Elk County, *Appellant.*

(54 P. 2d 930)

418

Thomas C. Forbes and Carl C. Chase, both of Eureka, for the appellant.
Clifford Sullivan, of Howard, for the appellee.

The opinion of the court was delivered by

Hutchison, J.: This was an action to recover from a school-district board upon a teacher's contract on account of the breach thereof by the board.

The written contract appears to be in the usual form, and a copy thereof is attached to the petition. The petition alleges certain oral agreements as modifications thereof or additions thereto, some said to have been made prior to the execution of the written contract and some subsequent. The defendant board, after its demurrer to the petition had been overruled, filed an answer, which was a general denial and a special denial to the effect that the written contract was void, ultra vires, contrary to the statutes and of no effect. The trial court heard the evidence and rendered judgment for the plaintiff for the year's salary, from which judgment the defendant board appeals after the overruling of its motion for a new trial.

The most serious and almost exclusive legal question involved is the validity of the written contract. The beginning of the contract is in the following words:

"It is hereby agreed, by and between school district No. 134, county of Elk, state of Kansas, and Miss Verna Buchanan, the holder of a county certificate, this day in force . . ."

In the body of the contract the following sentence is contained:

"It is also provided that in case said teacher shall be legally dismissed from school or shall have her certificate legally annulled, by expiration or otherwise, then said teacher shall not be entitled to wages from and after such dismissal or annulment."

The contract was executed April 12, 1932, and covered the school year of eight months, beginning September 5, 1932.

It is alleged in the petition that at the time the contract was executed the plaintiff possessed the necessary educational qualifications to teach, govern and conduct the public school, but at that time had not taken the examination for a county certificate, of which said defendant was duly apprised at the time and prior to the execution of said contract. The evidence unquestionably shows that all the members of the board knew before signing the contract that the

plaintiff did not have a county certificate and were informed that she intended to take the county examination on June 24 and 25 for the purpose of procuring such certificate.

Plaintiff cites the case of *Moon v. Moon*, 102 Kan. 737, 173 Pac. 9, in support of her contention that the statement in the contract as to the plaintiff being the holder of a county certificate this day in force is a formal statement, a mere recital, subject to modification. It was held in that case that Charles Moon did not own a one-fourth interest in the property as stated in the contract, but the contract was held void for want of consideration, and it was stated in the opinion:

"Estoppel is now a matter of substantive law, and a recital in a contract is not conclusive unless it operated as a representation or warranty inducing the formation of the contract, or was itself of the essence of the contract. . . ." (p. 740.)

The holding of a county certificate would seem to be very much of the essence of this contract to teach, not only from the recital at the beginning of the contract, but also from the provision in the body of the contract, both of which are quoted above.

R. S. 72-1026 seems to limit the parties with whom school boards may make written contracts to "qualified teachers" by using the following language:

"The district board in each district shall contract with and hire qualified teachers for and in the name of the district, which contract shall be in writing, and shall specify the wages per week or month as agreed upon by the parties, and such contract shall be filed in the district clerk's office; and, in conjunction with the county superintendent, may dismiss for incompetency, cruelty, negligence or immorality."

Plaintiff insists that such requirements are fully met by one possessing the required amount of education, but it is difficult to reconcile this theory with the requirements of other sections. R. S. 72-1320 provides that—

". . . said board of examiners shall issue certificates, as by law provided, to all such applicants as shall pass the required examination and satisfy the board as to their good moral character and ability to teach and govern schools successfully."

R. S. 1933 Supp. 72-1326 provides that—

"A certificate issued under this act may be revoked by the board of examiners of the county in which said teacher is teaching on the ground of immorality or for any cause which would have justified the withholding of the certificate when it was granted."

R. S. 72-1350 provides for the registration of all such certificates, and R. S. 72-1351 is as follows:

"It shall be unlawful for any district board, board of education or board of trustees of a county high school to issue an order for payment of the salary for services as teacher of any holder of said certificate, diploma or other document unless said holder present a certificate of registration as provided for in section 2 of this act."

This contains a penalty which answers the argument that the qualification requirement is directory only and not mandatory.

The case of *Strange v. School District*, 132 Kan. 268, 295 Pac. 672, is cited by the appellant, and, eliminating the elements of fraud and misrepresentation, the situation is very similar. The contract in that case was held to be void, but the ruling was based largely, if not entirely, upon the fact of fraud and misrepresentations as to holding a certificate. Here we have no element of fraud and absolutely no misrepresentations, because every member of the board knew that the plaintiff did not have a teacher's certificate at the time the contract was executed, but it is a statutory requirement that they contract with qualified teachers. We have been shown no authority for the board to contract with others. The necessity of a teacher's certificate is classed along with other statutory licenses of professions, trades or business. It is said in 13 C. J. 423:

"Where a license or certificate is required by statute as a requisite for one practicing a particular profession, an agreement of a professional character without such license or certificate is ordinarily held illegal and void. This is true, for example, of an agreement made by an unlicensed or uncertified physician, an attorney at law, a conveyancer, an engineer, or a schoolteacher. The authorities are in accord on this point, where the license is required for public protection and to prevent improper persons from acting in a particular capacity and not for revenue purposes only."

It is also said under the heading of "Schools and School Districts," in 56 C. J. 370:

"Generally, under the statutes, it is a prerequisite to an applicant's appointment or employment as teacher or principal or superintendent, or to his recovery of wages under his contract, or damages for its breach, that he have in his possession or file with the proper board or officer a license or certificate of his qualifications, as prescribed by law, which certificate must be of the requisite class, and the necessity exists regardless of what his other qualifications for employment as a teacher may be. The requirement is statutory, not contractual, and it cannot be waived or dispensed with . . ."

The following cases from other states are cited for our consideration: *Tate v. School District*, 324 Mo. 477, 23 S. W. 2d 1013;

*Schafer v. Johns,* 23 N. D. 593, 137 N. W. 481; and *Hotz v. School District,* 1 Colo. App. 40.

In the Tate case it was held to be "a proper and reasonable construction of the statute" not to require the teacher to have at the time of signing the contract a certificate covering the entire period of employment, although the statute required it to be in force for the full time for which the contract is made.

In the Schafer case the statute provided that "no person shall be permitted to teach," etc., and the contract was held to be good when the teacher procured a certificate before school began. The Hotz case involved an implied contract based upon a temporary certificate.

24 R. C. L. 616, cited by appellee, is to the effect that the authorities are not agreed as to the question of the time when the teacher must have his certificate and refers to the above-cited cases, but the preceding section states the general law to be as follows:

"There are statutes in many jurisdictions providing that persons teaching in the public schools must be holders of teachers' certificates, and the question has frequently arisen as to the effect of a contract made by a board with a person not so qualified. Such provisions may be neither waived nor dispensed with, and it has been held broadly that the possession of the certificate is a necessary prerequisite to appointment or employment, and that any contract made with a teacher not having such certificate is void so as not even to be susceptible of ratification." (See, also, *Bourbon County Comm'rs v. Miller,* 132 Kan. 52, 294 Pac. 863.)

Other questions were presented in the briefs as to the admission of evidence concerning matters occurring before and after the execution of the contract and concerning the taking of a second examination and ultimately receiving a certificate, but because we consider the contract itself void for the reason the plaintiff was not the holder of a certificate at the time the contract was executed, no useful purpose can be served by a discussion of these other matters.

The judgment is reversed.