# SEAMONDS v. SCHOOL DIST. NO. 14, FREMONT COUNTY

(No. 2015; May 18, 1937; 68 Pac. (2d) 149)

478

For the appellant, the cause was submitted upon the brief of *A. H. Maxwell* of Lander.

There was no brief or argument upon behalf of respondent.

BLUME, Chief Justice.

On April 25, 1932, Pearl E. L. Seamonds, the plaintiff below and respondent here, entered into a contract with School District No. 21 of Fremont County, Wyoming, whereby she was employed as a teacher of that district for the period of nine months commencing with September, 1932, at the compensation of $100 per month. Plaintiff agreed "to keep herself qualified" and that "in case she shall be discharged for sufficient cause by the district board or shall have her certificate annulled, she shall not be entitled to any compensation from and after such dismissal or annulment." She at that time held a teacher's certificate—that is to say, an elementary permit—dated September 1, 1929, and effective for the term of three years from its date. Subsequent to the date of the contract, and some time in the spring of 1932, School District No. 14 of Fremont County was organized and took over the school in which the plaintiff, under the above mentioned contract, was to teach. Plaintiff claims, and it seems to be conceded, that School District No. 14, after its organization, orally agreed to assume the contract. The teacher's certificate held by plaintiff expired as noted, on August 31, 1932. The schools in District No. 14 opened on September 5, 1932. Before they opened, the school board of the district had a meeting with the teachers. They were asked regarding their certificates to teach. Plaintiff was present, and stated that she had no certificate at that time, but that she would probably get one within a few days. The board thereupon gave her until September

12 to obtain her certificate, but she failed to do so, and the board thereupon declared her position to be vacant, and directed her to turn over all property of the district then in her possession. Plaintiff was notified in writing, and the record indicates that she accepted the notice as a discharge as teacher of the district. It seems that plaintiff had made application for a renewal of her certificate some time during the summer of 1932; that she also attended, during the summer of 1932, the Colorado State Teachers College, and procured, on September 12, 1932, credits for twelve quarter-hours. She claims that, by reason of these credits, she was qualified to teach. She brought this action herein to recover from the defendant the sum of $900 for breach of contract, being compensation at the rate of $100 per month for the period of nine months. The district, in answering plaintiff's petition, alleged that plaintiff had no certificate to teach during the school year of 1932-1933, and that for that reason she was not entitled to recover herein. Plaintiff testified that she had no certificate, but at the same time claimed that she was "qualified." The trial court rendered judgment in favor of the plaintiff for the full amount claimed, and from that judgment School District No. 14 has taken its appeal to this court. We have not been favored with any brief on behalf of the respondent here.

The sole question herein is as to whether or not the plaintiff was required to hold a valid teacher's certificate in order to be able to teach under the contract heretofore mentioned and to recover compensation therefor. Provision is made by our statute for the issuance of teachers' certificates by the State Board of Education. Section 99-126 to 99-129, Rev. Stat. 1931. Section 99-130 provides.

"No person shall teach or supervise a public school in the state of Wyoming and receive compensation therefor out of any public fund who at the time of rendering

such services, is not a holder of a certificate granted under the provisions of this article."

Section 99-131 provides:

"All certificates must annually be registered at the office of the county superintendent of schools in the county wherein the holder shall intend to teach the ensuing year. Before such certificates can be registered the holder of each must furnish satisfactory evidence of having complied with the rules and regulations of the state board of education with reference to professional study. Failure to comply with the registration law shall invalidate the holder's certificate and such person shall not be entitled to receive pay for teaching, provided, that exception to this regulation may be permitted by the state board of education upon the written application of a district board."

These sections seem to be plain and unequivocal. It is said in 56 C. J. 370:

"Generally, under the statutes, it is a prerequisite to an applicant's appointment or employment as teacher or principal or superintendent, or to his recovery of wages under his contract, or damages for its breach, that he have in his possession or file with the proper board or officer a license or certificate of his qualifications, as prescribed by law, which certificate must be of the requisite class, and the necessity exists regardless of what his other qualifications for employment as a teacher may be. The requirement is statutory, not contractual, and it cannot be waived or dispensed with."

In a note to 42 L. R. A. N. S. 413, in which many cases are cited ,it is stated:

"And it is settled that a teacher who lacks the required certificate or license cannot recover upon a contract for services rendered thereunder. * * * Nor can the teacher recover damages for a breach of such a contract unless he has been licensed to teach as required by statute."

See also note in Ann. Cas. 1913 C, page 372.

The record does not clearly show upon what theory

the trial court decided this case. It would seem that the court thought that plaintiff should have been given a longer time to procure a renewal of her certificate, or a new one, and that she was discharged too soon. However, a longer time would have been of no avail. The evidence shows that plaintiff had no certificate to teach from and after August 31, 1932, until September 12, 1934, when she obtained a renewal of her elementary permit. Moreover, plaintiff knew that, under the statute, she was required to hold a certificate in order to be able to teach and to draw compensation for her services. The school district was unable, and not required, to do anything on her behalf in order to obtain a renewal of her permit. The efforts in that connection were required to be made by plaintiff herself. In order to obtain a renewal, it was necessary for her, it seems, to obtain credits additional to those which she had on September 1, 1929. She had the period of three years in which to obtain these credits, and it can hardly be reasonable to hold that the district, appellant herein, should be held responsible because plaintiff waited until it was too late to have her certificate renewed before or at the time of its expiration.

It seems to have been the theory of counsel for the respondent that it was not essential for plaintiff to hold a certificate to teach, but that it was sufficient for her to have the requisite credits to obtain one. Plaintiff expressed this thought by stating that she was "qualified." Whether the trial court took that view or not does not appear. We think that this was and is an erroneous view. Plaintiff, under the statute, could not be the judge of her own "qualification." That matter is left to the State Board of Education, under the statute. A number of elements enter into a teacher's qualification. The statute clearly makes a certificate to teach one of the requisites, or, rather, makes the certificate the sole evidence thereof. In Buchanan v. School Dis-

trict, 143 Kans. 417, 54 P. (2d) 930 (syllabus) it is held:

"Statutory requirements limiting school district board in making contracts for school teachers to 'qualified teachers' held to include, not only possession of requisite amount of education and ability to pass prescribed examination to obtain a certificate, but also good moral character and ability to teach and govern schools successfully, and possession of certificate is necessary evidence of such qualification."

In the case of Baker v. School District, 12 Vt. 192, it appears that the statute provided that "no instructor shall be entitled to receive any compensation for his or her services in the instruction of any of the schools aforesaid without first obtaining—a certificate of his or her qualifications as aforesaid." Speaking of this statute, the court said:

"It was undoubtedly intended to deprive unqualified teachers of all compensation. And as there must be some practicable mode of determining the qualification of teachers, it was made to depend upon their obtaining a certificate to that effect."

In Jackson v. Hampden, 20 Me. 37, it was held that even if an examining committee should neglect or wantonly refuse to examine a person for his or her qualifications as a teacher, such person would not be authorized to teach and recover his or her wages without a required certificate. "The production of it," the court said, "is an indispensible prerequisite to a legal employment." That case was followed in Jose v. Moulton, 37 Me. 367. These decisions were under a statute which provided that no person should teach any public school without a certificate, and that a person doing so should not be able to recover any compensation. The statute, accordingly, was very similar to the statute in this state. In the case of People ex rel. v. Board of Education, 56 App. Div. 368, 67 N. Y. S. 836, affirmed in 167 N. Y. 626, 60 N. E. 1118, a statute was con-

sidered reading as follows: "No person shall teach in any public school in the city who has not such license except as herein otherwise provided, nor shall any unlicensed teacher have any claim for salary." The court said:

"The appellant, therefore, having no license from the city, was under these provisions of the statute precluded from teaching in any public school in the city of New York and having no license it was the duty of the city superintendent of schools to refuse to continue her in the position."

In the case of Barr v. Deniston, 19 N. H. 170, a statute was considered which in part provided that no person should receive any compensation for teaching a district school without producing a teacher's certificate. The court, commenting thereon, said in part as follows:

"The statute is founded on considerations of high public policy, being designed to secure to the youth of the State the services of competent teachers, not merely as a boon to themselves and to their seniors in the school district, but for the purpose of training them for the duties they are in due time to assume of defending the institutions of their country. To insure this important object, the law requires that before he can be fully invested with the office of a schoolmaster, the candidate obtain the approbation of the committee appointed to inquire into his qualifications. Without the certificate of this committee, he is a mere volunteer in the functions of the office ,and an usurper of its prerogatives."

In the case of Smith v. Bank, 125 Ark. 459, 188 S. W. 1167, the court held that revocation of a teacher's certificate, also at the same time cancels a contract to teach which may have been entered into prior to the revocation. In O'Leary v. School District, 118 Mich. 469, 76 N. W. 1038, it was held that a contract to renew employment for an additional term is unenforceable, if a teacher has no certificate to teach for such additional time. In Harrison Township v. Conrad, 26 Ind. 337,

the court had under consideration a statute prohibiting the employment of a teacher not having a certificate of qualifications. The underlying purpose of such a statute is, of course, substantially the same as the purpose underlying our own statute. The court in that case stated, speaking of the statute:

"It was intended by the requirement of a certificate of qualification to guard against the squandering of a sacred public fund, upon persons to teach without being capable of performing a teacher's duties, and to insure the employment of competent persons only as teachers, thereby making the schools useful as instruments for the education of the young."

And in Jackson School Township v. Farlow, 75 Ind. 118, the court, speaking of the same statute, stated in part as follows:

"The purpose of the statute is to compel those who desire to enter upon the responsible duties of teachers to submit to an examination by competent school officers, and to effect this purpose the stringent provision prohibiting recoveries by unlicensed teachers was incorporated. The question of qualification and preparation must be determined by the school authorities, not by courts or juries. Courts can only inquire whether the requisite license has been obtained, and, if they find that it has not been, then their plain duty is to deny a recovery. The possession of a license is, therefore, indispensable to the right of action. * * * The requirement that teachers shall obtain a license is not a condition of the contract, but is a command of the law."

We see no escape from the reasoning of the foregoing cases, nor from the specific, clear, and unequivocal provisions of Section 99-130, supra. It provides that no person shall teach unless he or she holds a certificate. Plaintiff, therefore, subsequent to September 1, 1932, to September 1, 1934, in teaching or attempting to teach, would have acted in violation of the plain provisions of the statute, and this itself would seem to

prohibit any recovery herein. But the statute goes further, and specifically provides that no person, not a holder of a teacher's certificate, shall receive any compensation for rendering services. If no compensation can be recovered, even when services have actually been rendered, it would, of course, be anomalous to hold that compensation could be recovered when no services have been rendered, as is true in the case at bar, except only, perhaps, for a few days.

We have in the foregoing left out of consideration the special provisions of the contract in this case. Plaintiff agreed to keep herself qualified. This, as above noted, included the possession of a certificate. She failed to perform that part of her agreement. The contract further provides that if plaintiff's certificate should be annulled, she should not be entitled to any compensation from and after the time of such annulment. The plaintiff's certificate to teach was, it is true, not annulled, in the ordinary sense of that term, but it expired on September 1, 1932, and it would seem that this should be treated as the equivalent of an annulment by operation of its own terms, and hence should be held to be included within the spirit of the contract entered into between the parties hereto.

Before the final decision herein, there was submitted to the court a memorandum used by counsel for plaintiff in the trial court. It calls attention to the fact that the State Board of Education is authorized to make rules and regulations for administering the laws governing certificates of teachers. Sec. 99-115, R. S. 1931. It is claimed therein that the rules and regulations of the board in force during the year 1932 justify the allowance of plaintiff's claim. We do not think so. It is stated on page 7 of the regulations that "in the future, certificates will not be dated back to legalize teaching done before the earning of the credit on which the certificate is based." We do not see the application

of this provision in the case at bar. No certificate issued by the Board of Education has been issued which is dated back or attempts to legalize any teaching in the past, even if that could be done. Again, it is stated in a note on page 9 of the same regulations that "All certificates are renewed by earning seven one-half hours in education." Plaintiff received a certificate, on September 12, 1932, as above stated, from the Colorado State Teachers College for twelve quarter-hours, which would be three full hours. Counsel for plaintiff construes the seven one-half hours mentioned above as meaning seven one-half quarter hours. There is nothing in the statement above quoted which justifies that claim. But in any event, the statement cannot be construed otherwise than that certificates will be renewed upon getting the proper credits, and not that certificates are renewed automatically when these credits have been received. Again, it is claimed that the statement on page 18 of the same regulations to the effect that "Teachers may be paid for services rendered while applications are pending" left the contract made in the case at bar in force. Obviously, the board could make no regulations contrary to the provisions of the statute. Hence, whatever its meaning may be, the statement cannot be construed as authorizing the payment of money to teachers who have no certificate.

From what has been said, it is clear, we think, that the judgment of the trial court herein must be reversed, with directions to dismiss plaintiff's petition herein. It is so ordered.

*Reversed with directions to dismiss.*

RINER and KIMBALL, JJ., concur.