No. 35,670

E. E. RODDY, *Appellee,* v. HILL PACKING COMPANY, *Appellant.*

(137 P. 2d 215)

Opinion filed May 8, 1943.

*A. Harry Crane,* of Topeka, argued the cause, and *Ward D. Martin,* of Topeka, was on the briefs for the appellant.

*Jacob A. Dickinson,* of Topeka, argued the cause, and *Edward Rooney,* of Topeka, was on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: This was an action to recover money for breach of an oral contract.

Material allegations in the petition are as follows: The defendant orally proposed to plaintiff, who was the owner of a Ford truck and semitrailer and the holder of KCC and ICC permits for trucking operations between Harveyville, Kan., and Kansas City, Mo., that if he would purchase a White Motor Company truck or tractor and would equip his semitrailer with special equipment required for proper transportation of aged and decrepit horses, the defendant would enter into a trucking contract with plaintiff for a period of one year and would use his equipment between Topeka, Kan., and Denver, Colo., a minimum of 2,405 miles per week in hauling for defendant and pay him the sum of eight and one-half cents per mile for such hauling; the plaintiff to furnish all necessary drivers and pay all charges and expenses of his operations, including expense in the sum of approximately $60 in the equipping of his semitrailer, to furnish his Kansas state license tag and liability insurance, all other licenses, permits and mileage fees to be furnished and paid for by the defendant. The plaintiff accepted such offer, purchased a White cab over-engine tractor and made required alterations of his semitrailer and placed himself in readiness to perform his part of the contract. Thereafter between May 14, 1940, and June 13, 1940, defendant furnished plaintiff approximately 4,640 miles of hauling, and on or about June 14, 1940, refused to furnish further hauling and announced its intention to furnish no further hauling to the plaintiff at any time in the future.

The petition further alleged that by reason of the failure of defendant to comply with the terms of the contract the plaintiff was unable to meet charges and payments upon his equipment and was forced to deliver the same to the holders of the mortgage thereon to his loss and damage in the sum of $1,575; that he was forced to permit his ICC and KCC permits to lapse to his loss and damage in the sum of $2,500; that he was injured and damaged through loss of earnings and profits under such contract in the sum of $5,000 and that in reliance upon the contract he had expended the sum of $400 in altering and preparing his equipment for performance thereof to his injury and damage in such sum.

The defendant's answer and cross-petition contained an admission of its corporate existence and a general denial of all matters alleged by the plaintiff in his petition, and in addition contained the following allegations: There were negotiations between plaintiff and defendant during April, 1940, which were not consummated until on or about the 3d of May, 1940, at which time the parties entered into an agreement in writing, a copy of which entitled "truck lease" was attached to the petition and made a part thereof; pursuant to the terms of said truck-lease agreement the defendant leased the equipment heretofore described and employed plaintiff to operate the same at a wage of thirty cents per hour in any event and in addition to pay him the difference between five cents per mile for each mile actually traveled by such motor equipment and the actual cost of operation of the same if plaintiff was able to operate it at an actual cost of less than five cents per running mile; plaintiff was fully paid for all services rendered by him under the contract.

The answer further alleged: On or about May 30, 1940, plaintiff was sent to Western Kansas with the equipment for a haul on said date or the day thereafter and while operating the truck near Ellsworth, Kan., he became intoxicated, was placed in jail and as a consequence his driver's license was later revoked, and because thereof his employment could no longer be continued by the defendant; it was necessary for defendant, while plaintiff was in jail to pay $34.56 to obtain a release of the truck and to send another driver to Ellsworth to continue the operation thereof at an expense of $10; after his release from jail the plaintiff returned to Topeka and objected to the driver who was being used by the defendant in driving the truck and it was then parked on plaintiff's property and ceased to be used for hauling purposes; on or about June 17, 1940, the plain-

tiff induced the defendant to permit him to furnish a driver for the truck and borrowed the same for the purpose of moving his household effects from Harveyville, Kan., to Coffeyville, Kan., on plaintiff's promise he would deliver the truck back to the defendant on the following evening; pursuant to this arrangement the defendant put thirty gallons of gasoline in the truck at a cost of $4.05 and delivered it to plaintiff for the purpose stated but plaintiff failed to return the truck as agreed and defendant has neither had possession of nor seen it since such date; that by reason of the acts and conduct of the plaintiff it became impossible for defendant to carry out the terms of the written-lease agreement as to rental of said truck and it was canceled.

The cross petition adopted pertinent portions of the answer as a part thereof and alleged plaintiff was indebted to defendant in the sum of $34.56 for release of the truck from officers at Hays, Kan., the sum of $10 for expenses of sending the new driver for such truck and the sum of $4.05 for gasoline placed therein when it was delivered to plaintiff, for all of which the defendant prayed judgment.

To the answer and cross petition the plaintiff filed his reply consisting of a general denial and these allegations: That the plaintiff's signature to the truck-lease agreement set out in the answer was obtained by fraudulent representations of defendant's agent it contained the agreement set forth in plaintiff's petition; that it did not contain the real agreement between the parties and was fraudulently substituted by defendant for the contract in writing intended to be executed by plaintiff and which would have set forth the true agreement between such parties as alleged in his petition; that if the contract between the parties was ever reduced to writing and entered into as alleged in the answer, the same had been wholly set aside and abandoned by the parties subsequent to the execution of said instrument and that the agreement as alleged in plaintiff's petition had been reaffirmed and acquiesced in by the parties. The prayer of the reply was that defendant take nothing under its answer and cross petition, that the plaintiff be granted relief in accordance with his original petition and that the agreement alleged and set forth in the answer be reformed and corrected to set forth the true agreement between the two parties as alleged in the petition.

On the issues here related this case came on for trial to a jury. After the plaintiff had adduced his evidence in support of his cause of action as set forth in the petition the defendant demurred to such

evidence, the exact language of such demurrer as it appears from the record being as follows:

"At that time the defendant demurs to the evidence of the plaintiff on the ground that it does not state facts sufficient to warrant a recovery in favor of the plaintiff, and against the defendant, because it does not show a damage sustained, because it does not show any mitigation or attempted mitigation of damages, and because if the plaintiff's theory of this contract is correct it was illegal and he could not recover on an illegal contract."

It would serve no useful purpose to here relate in detail the evidence offered by the plaintiff. It will suffice to say such evidence supported generally the allegations of the petition and was sufficient as against a demurrer if the contract disclosed by it was not so illegal as to bar an action predicated thereon.

.With respect to this phase of the question we believe a fair analysis of the testimony adduced by the plaintiff discloses the following situation: The plaintiff, who at no time had procured a KCC permit to transport property by motor vehicle from Topeka, Kan. to Denver, Colo., had a contract with defendant whereby he agreed to transport property belonging to the defendant from Denver, Colo., to Topeka, Kan., for a consideration (the sum of eight and one-half cents per running mile), the plaintiff to own, operate and have full control of his motorized equipment including the operators thereof, to pay all expenses of operation and furnish his own liability insurance and Kansas state license tag, the defendant to furnish plaintiff with, and pay for, all other necessary permits, licenses and mileage fees, required by state law, including such permit as was required by the laws of the state of Kansas in cases where a person engages in the transportation by motor vehicle of property of another under the circumstances described in the petition.

In addition to the general summary of the testimony just related it should be stated the evidence disclosed that an agent of defendant in company with plaintiff went to the office of the State Corporation Commission and there, in some manner, the exact details of which are not disclosed by the record, obtained from the commission KCC licenses for plaintiff's equipment under authority of the private-motor-carrier license then held by defendant. It further disclosed plaintiff was required to make out time reports and expense tickets for each trip although plaintiff was eventually required to pay all expenses.

The demurrer to the evidence was first sustained by the trial court on the ground the evidence disclosed the contract to be illegal. In due time the plaintiff filed a motion for new trial and thereafter the order sustaining the demurrer was set aside and vacated on the express ground the demurrer had been erroneously sustained and a new trial was granted.

Notice of appeal was properly served and filed and this appeal is here on one assignment of error which reads as follows:

"The court erred in reversing himself on his sustaining of a demurrer to the evidence of appellee and on the granting of a new trial in that said evidence showed that if the agreement was made as claimed by appellee it was illegal and not enforcible."

At the outset we are confronted with the legal proposition of whether this question is properly here for review in view of the fact that a new trial was ordered and no final judgment was rendered against the appellant. It is well settled that an order overruling a demurrer is an appealable order. (*Israel v. Lawrence*, 126 Kan. 586, 270 Pac. 602 and *Parsons v. State Highway Comm.*, 146 Kan. 476, 481, 72 P. 2d 75.)

We think the action of the trial court was tantamount to an overruling of the demurrer to the evidence and it will be so considered here notwithstanding the additional order of the court granting appellee a new trial.

Courts in ruling on a demurrer to the evidence never weigh such evidence or compare contradictory testimony but accept all evidence as true and consider only such portions thereof as are favorable to the party adducing it. (*Rush v. Brown*, 153 Kan. 59, 109 P. 2d 84; *Myers v. Shell Petroleum Corp.*, 153 Kan. 287, 110 P. 2d 810 and *Picou v. Kansas City Public Service Co.*, 156 Kan. 452, 134 P. 2d 686.) They do not hesitate, however, to look into the substance of the contract and all the circumstances in order to determine the actual relation. In this case that relation must be determined from the language of the petition and the evidence considered in its relation to the subject matter, the transportation of property by motor vehicle.

A careful examination of the evidence as it appears in the record justifies the statement that appellee and all his witnesses testified in substance that the terms of the contract made with appellant were the same as those set forth in the petition. There was no material conflict in the testimony with respect to the terms of the contract

and such terms are in no sense ambiguous or uncertain. In fact, there could be no dispute in this regard under appellee's theory of the situation for he had filed a reply in which he had demanded a reformation of the lease agreement relied on by appellant in its answer and cross-petition to the end that such instrument would set forth the true agreement between the parties *as alleged in his petition.* Under such circumstances, even though it be conceded the oral contract had never been reduced to writing the relation of the parties to the contract is a question of law for the court to determine. (*Dohner v. Grocery Co.,* 116 Kan. 237, 226 Pac. 767; *Houdek v. Gloyd,* 152 Kan. 789 [two cases], 107 P. 2d 751.)

If this were a case involving the right of a third person to institute an action against the appellant for injuries resulting from the negligent act of appellee on the theory the latter was a servant and employee of appellant it is possible, accepting all the evidence as true and giving it the benefit of all reasonable inferences to be drawn therefrom, we might have some difficulty in holding as a matter of law that appellee was an independent contractor under the rule (See *Houdek v. Gloyd,* supra) that an independent contractor is generally one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of the employer except as to the result of his work. It will be noted we say "might have difficulty." We do not decide that question because its determination is not necessary to a proper disposal of this appeal.

We do not, however, experience any difficulty in concluding that the contract as set forth in the petition disclosed, and the evidence here related as having been adduced in support of it conclusively established, such a relationship of contractor and contractee to exist between appellee and appellant as to make appellee a contract motor carrier of property for hire within the meaning and intent of G. S. 1935, 66-1,108, which reads:

". . . (e) The term 'public motor carrier of property' when used in this act shall mean any person who holds himself out to the public as willing to undertake for hire to transport by motor vehicle, from place to place, the property of others who may choose to employ him. . . . (g) The term 'contract motor carrier of property' when used in this act shall mean any person engaged in the transportation by motor vehicle of property for hire and not included in the term 'public motor carrier of property' as herein defined. . . . (i) The term 'private motor carrier of property' when used in this act shall mean any person engaged in transportation, by motor vehicle, of property

sold or to be sold by him in the furtherance of any private commercial enterprise, or property transported by the owner, lessee or bailee for the purpose of lease, rent or bailment."

Further consideration of this subject requires that we give attention to certain pertinent sections of the statute having to do with the regulation of contract motor carriers of property.

Authority of the state corporation commission to license such carriers is to be found in G. S. 1935, 66-1,111. It reads:

"No public motor carrier of property or passengers, contract motor carrier of property or passengers or private motor carrier of property shall operate any motor vehicle for the transportation of either persons or property for compensation on any public highway in this state except in accordance with the provisions of this act."

Regulatory powers of the commission over contract motor carriers is provided in G. S. 1935, 66-1,112a, which reads:

"Upon the filing of an application for a permit and compliance with all lawful requirements, the commission is hereby vested with power and authority to grant permits to contract motor carriers; to supervise and regulate such motor carriers for the purpose of promoting safety upon the highways and the conservation of their use; to regulate and supervise the accounts and method of operation of same; to prescribe such rules and regulations as it may deem necessary to carry out the provisions of this act; and to supervise and regulate all contract motor carriers of property or of passengers and all matters affecting the relationship between such motor carriers and the traveling and shipping public and other carriers."

Direction that such carriers procure licenses and making failure to do so unlawful is to be found in 66-1,115. It reads:

"It shall be unlawful for any 'contract motor carrier of property or passengers' or 'private motor carrier of property' to operate as a carrier of property or passengers within this state either in intrastate commerce or in interstate commerce without first having obtained from the public service commission a license therefor. An application shall be made to the public service commission in writing stating the ownership, financial condition, equipment to be used and physical property of the applicant, and such other information as the commission may request. Upon receipt of such information and on compliance with the regulations and payment of fees, the public service commission shall issue a license to such applicant."

G. S. 66-1,130 makes it a misdemeanor to violate the above provisions of the statute and provides the penalty for such violation.

Appellee suggests there is no difference between a "contract carrier" permit and a "private carrier" permit and that it is unimportant under which type of license a carrier operates so long as he has one. There are several distinctions to be made between the two

types of licenses but we are not disposed to take up space in this opinion in making them. There is a short and simple answer to that contention. The answer is that the law requires the carrier transporting property under certain conditions to procure a "private carrier" license and the carrier transporting property of another for hire to procure a "contract carrier" license.

Neither appellant nor appellee cite any authorities on this question. We believe there are some which are helpful of its determination.

In *Haynes v. MacFarlane*, 207 Cal. 529, 279 Pac. 436, it was held:

"An autotruck operator, hauling freight on the public highways for compensation between fixed termini and over a regular route, may not avoid regulation under the Auto Stage and Truck Transportation Act by entering into and operating under numerous so-called private contracts with his customers, where the Railroad Commission finds (on sufficient evidence) said operator to be a common carrier, posing as a private carrier, in an obviously deliberate attempt to evade public regulations." (Syl. ¶ 1.)

In the opinion in the case just cited it was said:

"The fact that the defendant in his contract called himself a 'private carrier' could not make him such in the light of the undisputed facts to the contrary." (p. 534.)

The provisions of the contract in the case of *Reavley v. The State*, 124 Tex. Cr. Rep. 529, 63 S. W. 2d 709, were very similar to those in the case at bar. The defendant was convicted of having failed to obtain a permit from the Texas Railroad Commission under a statute requiring such permit for a contract carrier and defining that term as follows:

"The term 'contract carrier' means any motor carrier as hereinabove defined transporting property for compensation or hire over any highway in this state other than a common carrier." (p. 531.)

In affirming the conviction the Texas court held:

"Where defendant was under written agreement for a weekly sum to furnish his truck and driver and to pay all operating expenses, including wages of driver, and was to keep truck in running condition, and hold other party harmless against all claims, and driver of truck was to be subject to exclusive control of lessee company in hauling and delivering its products, held 'contract carrier' required to have permit as required by statute before operating truck over public highway." (Syl.)

We now direct our attention to the question of whether the appellee's contract with appellant whereby he agreed to transport the appellee's property for hire as a contract carrier under its private

carrier permit was so illegal as to bar any recovery under such contract.

It is elementary law that a contract obligating the parties or either of them to violate a penal statute is unenforceable and void; and the breach of such contract is *damnum absque injuria*—a matter for which the law provides no redress. A long line of well-considered cases has committed this court to the rule that where a statute expressly provides a violation thereof shall be a misdemeanor, a contract made in direct violation of the same is illegal and there can be no recovery thereon although such statute does not in express terms prohibit the contract or pronounce it void. (*Setter v. Alvey,* 15 Kan. 157; *Ainsworth v. Miller,* 20 Kan. 220; *Pinney v. Bank,* 68 Kan. 223, 75 Pac. 119; *Ridgway v. Wetterhold,* 96 Kan. 736, 153 Pac. 490; *Thacher v. Smith,* 103 Kan. 641, 175 Pac. 983; *Morris v. Firemen's Ins. Co.,* 121 Kan. 482, 247 Pac. 852; *School District v. Roanoke State Bank,* 126 Kan. 122, 267 Pac. 35; *Ewing v. Halsey,* 127 Kan. 86, 272 Pac. 187; *Bourbon County Comm'rs v. Miller,* 132 Kan. 52, 294 Pac. 863; *National Bank v. White,* 133 Kan. 490, 1 P. 2d 257; *Cook v. Donner,* 145 Kan. 674, 66 P. 2d 587.)

Although the general rule as heretofore stated is well established a diligent search discloses no decision wherein the legality of a contract similar to the one under consideration has been submitted to this court for determination. An extended examination of other authorities discloses that we are not without a precedent to guide us in arriving at our conclusion.

In the case of *Rainer v. Western Union Telegraph Co.* (Mo. App.), 91 S. W. 2d 202, the plaintiff, who was engaged in the trucking business, contracted with a creamery company to transport cream from West Plains, Mo., to the New Orleans Ice Cream Company at New Orleans, La. The cream was loaded and the plaintiff proceeded with its transportation to the point of destination. On the road plaintiff ruined a casing and wired the shipper for money with which to buy a new one and the latter promptly wired the money as requested. For some reason delivery of the wire was delayed and plaintiff was unable to deliver the cream until it had soured and became of no value to either the shipper or the consignee. Plaintiff brought an action against the defendant for the value of the cream, on the theory its delay in delivering the telegram was responsible for the loss. The evidence established that at the time plaintiff made the contract with the shipper he did not have, and did not thereafter

have from the Public Service Commission of Missouri a permit to operate a truck line as required by the laws of that state, which fact was known to such shipper. The plaintiff recovered a judgment and the defendant appealed. In reversing the judgment the court said:

". . . The contract with the Western Union Telegraph Company grew out of an illegal contract, made by the owner of the truck, who had no permit from the Public Service Commission of Missouri to transport the cream in suit over the highways of Missouri. This was done with the consent and knowledge of the Kent Dairy Products Company. To transport the cream for hire without a permit was a violation of the statutes of Missouri, and unlawful.

"In our opinion, the law leaves the owner of the cream and the owner of the truck in exactly the same position before the law. They entered into the contract, and the law can neither recognize the claim of the owner of the truck for the carriage charges nor the claim for damages by the owner of the cream for the failure to lawfully transport the same. . . .

"The evidence fails to disclose that the defendant had any knowledge of the illegal contract of carriage entered into between the plaintiff in this case and the Kent Dairy Products Company, and under the law and the holdings of the decisions cited, as above stated in this opinion, the owner of the truck, the plaintiff in this case, could not recover the carriage damages from the Kent Dairy Products Company, because the contract of carriage itself was based on an illegal act, in violation of the law; neither could the Kent Dairy Products Company sue and recover from the plaintiff herein, the owner of the truck, for damages resulting to its cream by reason of a failure to carry out the terms of the contract of carriage, for the reason that the contract of carriage itself was illegal.

"If the carrier would not be liable himself, under the contract of carriage, then he should not be allowed to sue a third party and recover for damages to the goods in his possession, for carriage, were [where] he himself would not be liable to the owner of the goods for failure to transport them.

"We must therefore hold that neither the plaintiff nor the Kent Dairy Products Company has a lawful right to the fruits of an unlawful contract, and cannot recover damages arising therefrom, .. . . ." (p. 207.)

We approve of the long line of decisions in this state holding that a contract made in violation of law is void and we are in accord with the rule announced in the case just cited.

In the case at bar the petition alleged and the evidence established that appellee based his right to relief on a contract where he, under conditions which made him a contract carrier, was to and did transport appellant's property without obtaining a license as required by law. To so operate was a violation of law. The contract was illegal and cannot be relied on as a basis for a cause of action against appellant.

What disposition then is to be made of this appeal? The trial court properly sustained the demurrer to the evidence. It was error to vacate and set aside the order sustaining the demurrer. Treating the action of the trial court in that respect as tantamount to an overruling of the demurrer to the evidence it was error for the trial court to overrule such demurrer.

One other question demands our attention. When an action has been brought on a contract and during the course of the trial it becomes apparent that the contract sued on is in violation of law it is the duty of the trial court to dismiss the action. (*Sage v. Oil Country Specialties Mfg. Co.,* 138 Kan. 501, 27 P. 2d 542, and *Ditzen v. Given,* 139 Kan. 506, 32 P. 2d 448.)

The order of the trial court overruling the demurrer to the evidence is reversed and the cause remanded with instructions to sustain the demurrer and dismiss the action.